UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-24506-CIV-DIMITROULEAS

CITY OF MIAMI, a Florida municipal
corporation,

      Plaintiff,

vs.

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.;
COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE
HOME LOANS; and COUNTRYWIDE
BANK, FSB,

      Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE is before the Court upon a Motion to Dismiss (the "Motion") [DE 33],

filed herein on February, 28, 2014 by Defendants Bank of America Corporation ("BoA"), Bank

of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, and

Countrywide Bank FSB ("Defendants").  Plaintiff City of Miami ("Plaintiff" or "City") has filed

an Opposition [DE 37].  Both parties also filed supplemental briefing. The Court has carefully

considered the Motion [DE 33], the Plaintiff's Opposition [DE 37], the Defendants' Reply [DE

41], and the Plaintiff's Surreply [DE 48], and the oral arguments made at the June 20, 2014,

hearing.  The Court is otherwise fully advised in the premises.

### I.      BACKGROUND

This suit is brought pursuant to the Fair Housing Act of 1968 ("FHA"), as amended, 42

U.S.C. § 3601, *et seq.*, to seek redress for injuries allegedly caused by Defendants' pattern or

practice of illegal and discriminatory mortgage lending.  Comp. [DE 1] ¶ 2.  Specifically, Plaintiff seeks injunctive relief and damages for financial injuries due to foreclosures on Defendants' loans in minority neighborhoods and to minority borrowers that are the result of Defendants' discriminatory lending practices, including both intentional discrimination and disparate impact discrimination.  ¶ 2.  Plaintiff alleges that beginning in 2004, Defendants began to flood historically under-served minority communities with high cost and other "predatory" loans, allegedly constituting "reverse redlining."  ¶ 7.

Plaintiff alleges that Defendants engaged in both redlining and reverse redlining.  ¶ 10.  Plaintiff further alleges that Defendants' pattern and practice of reverse redlining has caused an excessive and disproportionately high number of foreclosures on Defendants' loans in the minority neighborhoods of Miami.  ¶ 11.  Plaintiff also alleges that Defendants' practice of traditional redlining has also caused an excessive and disproportionately high number of foreclosures on Defendants' loans in the minority neighborhoods of Miami.  ¶ 12.  The Complaint alleges that, since 2004, Defendants have engaged in a continuing and unbroken pattern and practice of mortgage discrimination in Miami that still exists today.  ¶ 10.

The Complaint further alleges that Defendants would have comparable foreclosure rates in minority and white communities if they had properly and uniformly applied underwriting practices in both areas.  ¶ 13.  The Complaint alleges that Defendants' practice of failing to underwrite minority borrowers' applications properly, and of putting these borrowers into loans which: (1) have more onerous terms than loans given to similarly situated white borrowers; and (2) the borrowers cannot afford, leads to foreclosures.  ¶ 13.

Plaintiff's Complaint includes data and statistical analysis, as well as statements from Confidential Witnesses to support its claims.  For example, a regression analysis that allegedly

controls for creditworthiness and other factors is offered to show that an African-American BoA borrower was 1.581 times more likely to receive a predatory loan than a white borrower, and a Latino borrower was 2.807 times more likely to receive such a loan.  ¶ 15.  Plaintiff alleges that Defendants have intentionally targeted predatory practices at African-American and Latino neighborhoods and residents by targeting these neighborhoods, without regard for credit history, for high-cost loans, for increased interest rates, points, and fees, for disadvantageous loan terms, and for unfair and deceptive lending practices in connection with marketing and underwriting mortgage loans.  ¶ 163.  Further, the Complaint alleges that the discretionary lending policies and practice of targeting minorities, who received predatory loan terms regardless of creditworthiness, have caused and continue to cause foreclosures in Miami.  ¶ 164.

Plaintiff further alleges that the discriminatory practices and resulting foreclosures in the minority neighborhoods have inflicted significant, direct, and continuing financial harm to the City.  ¶ 19.  Plaintiff seeks damages based on reduced property tax revenues based on: (a) the decreased value of the vacant properties themselves; and (b) the decreased value of properties surrounding the vacant properties.  ¶ 20.  Plaintiff also seeks damages based on the expenditures of municipal services that have been and will be required to remedy the blight and unsafe and dangerous conditions which exist at vacant properties that were foreclosed as a result of BoA's illegal lending practices.  ¶ 20.

Defendants now move to dismiss the Complaint on the grounds that (1) Plaintiff lacks standing[1]; (2) Plaintiff's FHA claim is time-barred by the statute of limitations; and (3) the Complaint fails to state a claim upon which relief can be granted.  For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

---

[1] In Defendants' Reply and Plaintiff's Surreply, the parties briefed the "zone of interests" issue.

## II.      LEGAL STANDARD

As a threshold matter, the Court must determine if jurisdiction exists before proceeding to the merits of the case.  *Sinochem Int'l Co. v. Malay Int'l Shipping Corp*, 549 U.S 422, 431 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purposes of deciding the merits of the case." (internal quotations omitted)). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc*., 411 F.3d 1242, 1247 (11th Cir. 2005). Attacks on subject matter jurisdiction under Rule 12(b)(1) are either facial or factual. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.,* 104 F. 3d 1256, 1260 (11th Cir. 1997). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Garcia*, F. 3d at 1260 (internal quotations omitted).  "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, F. 3d at 1261 (internal quotations omitted).  However, "[w]here the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits."  *Eaton v. Dorchester Dev., Inc.,* 692 F. 2d 727, 733 (11th Cir. 1982). Thus, when "an attack on subject matter jurisdiction also implicates an element of the cause of action," the court should apply a Rule 12(b)(6) standard.  *Garcia*, 104 F. 3d at 1261.

Regardless of the standard, "federal courts cannot exercise jurisdiction over cases where the parties lack standing."  *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist*., 647 F. 3d 1296, 1302 (11th Cir. 2011).  This principle exists because there is "a constitutional limitation of federal-court jurisdiction to actual cases or controversies" and "[o]ne element of the case-or-

4

controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1146 (2013) (internal citations and quotations omitted). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Fla. Wildlife Fed'n, Inc.*, 647 F. 3d at 1302 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Id.*

Where a plaintiff brings a cause of action pursuant to a federal statute, the plaintiff must establish both Article III standing and statutory standing. *See, e.g.*, *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987). Article III of the United States Constitution requires that a litigant have standing to invoke the power of a federal court. *See supra*. In contrast, statutory standing requires the plaintiff to establish that he falls within the class of plaintiffs whom Congress has authorized to sue under that statute. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

### III.  DISCUSSION

#### 1.  Count I: Violations of the Federal Fair Housing Act

##### A.  Standing under the Fair Housing Act

In order to have standing for any statutory cause of action, the zone of interests and

proximate causation requirements must be met.  *Lexmark*, 134 S. Ct. at 1391.  Upon application

of the appropriate 12(b)(6) standard, this Court finds that neither requirement is met in this case.

        *i.   Zone of Interests*

     The Supreme Court has made clear that the zone of interests test should be applied to any

cause of action being brought under a statute.  Courts are to "presume that a statutory cause of

action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the

law invoked.'"  *Lexmark*, 134 S. Ct. at 1388 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Supreme Court has stated that the zone of interests test "applies to all statutorily created

causes of action; that it is a 'requirement of general application'; and that Congress is presumed

to 'legist[e] against the background of' the zone-of-interests limitation."  *Lexmark*, 134 S. Ct. at

1388 (citing *Bennett v. Spear*, 520 U.S. 154, 163 (1977); *see also Holmes v. Securities Investor

Protection Corporation*, 503 U.S. 258, 287-288 (Scalia, J., concurring in judgment)).  The test

bars a plaintiff's claims when his "'interests are so marginally related to or inconsistent with the

purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized

that plaintiff to sue."  *Lexmark*, 134 S. Ct. at 1389 (citing *Match-E-Be-Nash-She-Wish Band of

Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2210 (2012)).

     The Fair Housing Act § 812 provides that after the expiration of a period for

administrative remedies,

> the person aggrieved may . . . commence a civil action in any appropriate United
> States district court, against the respondent named in the complaint, to enforce the
> rights granted or protected by this subchapter, insofar as such rights relate to the
> subject of the complaint.

In *Gladstone Realtors v. Village of Bellwood*, 441 U.S.  91, 108-09 (1979), the Supreme Court

held that § 812 provides "parallel remedies to precisely the same prospective plaintiffs" as does §

810.

This Court's[2] determination of whether Plaintiff has standing to sue under the FHA is guided by the Eleventh Circuit's opinion in *Nasser v. City of Homewood*, 671 F. 2d 432 (11th Cir. 1982). In that case, the Eleventh Circuit interpreted the FHA's zone of interests in light of the Supreme Court's decisions regarding the topic. In *Nasser*, the plaintiffs brought a claim under the FHA and claimed that they were injured by the diminution in value of their property as a result of the defendants' conduct. *Nasser,* 671 F. 2d at 436.

In deciding *Nasser*, the Eleventh Circuit considered *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972). In that case, the Supreme Court found that the plaintiffs, a white and a black resident of an apartment complex who alleged that they had lost the social and professional benefits of living in an integrated community, had standing and were within the zone of interests protected by the FHA. The *Nasser* decision noted that, in *Trafficante*,

> The reference to 'the person aggrieved' showed 'a congressional intention to define standing as broadly as is permitted by Article III of the Constitution' . . . insofar as tenants of the same housing unit that is charged with discrimination are concerned.

*Nasser*, 671 F. 2d at 437 (citing *Trafficante* 409 U.S. at 209).

The Eleventh Circuit also considered *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979). In *Nasser*, the Eleventh Circuit explained that the *Gladstone* decision "said that a showing of injury to the plaintiffs' community as in *Trafficante* coupled with economic injury to the value of the plaintiffs' homes was sufficient to establish standing under the Fair Housing

---

[2] The district court in *City of Los Angeles v. Bank of America Corp.*, 2014 WL 2770083 (C.D. Cal. Jun. 12, 2014) declined to expand the zone of interests requirement into the analysis of standing under the FHA. *See id.* at *8 ("To the extent that Defendants argue that post- *Thompson* and post- *Lexmark*, a plaintiff needs to meet a separate 'zone of interests' requirement in order to have standing to bring a FHA claim, the Supreme Court has not yet applied that requirement to the FHA. Although the Supreme Court may explicitly require a separate 'zone of interests' statutory standing analysis under the FHA if presented with the issue in the future, this Court declines to do so here."). Unlike the district court in *City of Los Angeles,* this Court is in the Eleventh Circuit so it is bound by the Eleventh Circuit's opinion in *Nasser v. City of Homewood*, 671 F. 2d 432 (11th Cir. 1982), which does apply this requirement to the FHA. *See infra.* If it turns out that the zone of interests for purposes of standing under the FHA is as broad as Article III standing, this court's ruling may very well be different as to the zone of interests analysis, but that would not change the deficiencies in Plaintiff's allegations of proximate cause, as discussed in the following section.

Act." *Nasser*, 671 F. 2d at 437 (citing *Gladstone*, 441 U.S. at 114-15).  However, the Eleventh

Circuit continued:

> There is no indication that the Court intended to extend standing, beyond the facts
> before it, to plaintiffs who show no more than an economic interest which is not
> somehow affected by a racial interest. There is no suggestion, either in the Act or
> its legislative history, that Congress intended to entrust the enforcement of the
> Fair Housing Act to such plaintiffs.

*Nasser*, 671 F. 2d at 437.  Accordingly, the Eleventh Circuit held that the property owner

plaintiffs lacked standing under the FHA:  "The policy behind the Fair Housing Act

emphasizes the prevention of discrimination in the provision of housing on the basis of

'race, color, religion, sex, or national origin.' . . . Simply stated, the plaintiffs offered no

evidence that they possess 'rights granted' by the Fair Housing Act. Their interest in

value of the property in no way implicates values protected by the Act." *Nasser,* 671 F.

2d at 437.

In this case, the Plaintiff alleges merely economic injuries.  [DE 1] ¶¶ 133-159.

Plaintiff prays for relief for economic injury from the reduction in tax revenue from the decrease

in property values.  ¶¶ 133-150.  The Plaintiff also prays for relief for injury caused by direct

expenditures that the City spent due to the foreclosures.  ¶¶ 151-159.  Neither of these economic

injuries is "somehow affected by a racial interest."  In fact, the injury alleged here is very similar

to the injury decided to be outside of the FHA's zone of interests in *Nasser*: an economic loss

from a decrease in property values.

The policy and purpose of the Fair Housing Act is to "provide, within constitutional

limitations, for fair housing throughout the United States."  42 U.S.C.A. § 3601.  The City's

complaints of decreased tax revenue and increased municipal services are "so marginally related

to . . . the purposes implicit in the statute that it cannot reasonably be assumed that Congress

intended to permit suit." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011).

Therefore, this Court finds that the City of Miami's claims fall outside of the zone of interests

protected by the FHA; Plaintiff lacks standing to sue under the statute.

### ii.  *Proximate Causation*

Courts are also generally to "presume that a statutory cause of action is limited to

plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark*, 134 S.

Ct. at 1390.  "The judicial remedy cannot encompass every conceivable harm that can be traced

to alleged wrongdoing." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519,

536 (1983).  "Proximate-cause analysis is controlled by the nature of the statutory cause of

action.  The question it presents is whether the harm alleged has a sufficiently close connection

to the conduct the statute prohibits." *Lexmark*, 134 S. Ct. at 1390.  As the Supreme Court

explained, "the proximate-cause requirement generally bars suits for alleged harm that is 'too

remote' from the defendant's unlawful conduct.  That is ordinarily the case if the harm is purely

derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* (citing

*Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268-269 (1992)).  A

plaintiff lacks standing where a causal chain is too attenuated and relies on the conduct of third

parties. *See Wehunt v. Ledbetter*, 875 F. 2d 1558, 1566-67 (11th Cir. 1989).

In this case, upon consideration of the allegations of the City's Complaint, the Court

holds that proximate causation for standing is not adequately alleged.  In order to establish

proximate causation, Plaintiff must demonstrate that the Defendants' alleged redlining and

reverse redlining caused the foreclosures to occur.  Here, Plaintiff does not allege facts that

isolate Defendants' practices as the cause of any alleged lending disparity.  Against the backdrop

of a historic drop in home prices and a global recession, the decisions and actions of third parties,

such as loan services, government entities, competing sellers, and uninterested buyers, thwart the City's ability to trace a foreclosure to Defendants' activity.  The independent actions of this multitude of non-parties break the causal chain. *See Fla. Family Policy Council v. Freeman*, 561 F. 3d 1246, 1253 (11th Cir. 2009) (casual chain cannot rely on "independent action of some third party not before the court").

Even if this first step of proximate causation were shown, Plaintiff would then have to complete the causal connection in its claim by demonstrating that the foreclosures caused the City to be harmed. Instead, the City offers vague and generalized allegations of harm (Comp. ¶¶ 53, 61, 75, 103, 109), statistics and studies that are either not limited to the City of Miami (Comp. ¶¶ 78 (relying on data from Chicago); 84-85 (relying on nationwide data); 16, 37-41, 80-81, 87-88, 110-12), not limited to Defendants' practices (Comp. ¶¶ 11, 19, 22, 80-85, 87-88, 110-11), or do not control for relevant credit factors that undoubtedly affect lending practices (Comp. ¶¶ 119-22; 11, 107-08, 124-25).  Although statistical correlations are asserted, they are insufficient to support a causation claim.  Moreover, Defendants are not responsible for the actions of intervening actors such as squatters, vandals or criminals that damaged foreclosed properties causing the City's municipal costs to rise.  Plaintiff's claim is entirely derivative, emphasizing how inextricably linked the possible effect of reverse redlining is with other economic forces acting upon the market.

### B.  Statute of Limitations

While the Court is dismissing this action for lack of standing, *see supra*, it also holds that the Complaint is subject to dismissal on statute of limitations grounds.

A limitations clock begins to run "as soon as facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Telesca v. Vill. of Kings*

*Creek Condo. Ass'n*, 390 F. App'x 877, 882 (11th Cir. 2010).  For purposes of the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or termination of an alleged discriminatory . . . housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . ."  42 U.S.C. § 3613(a)(1)(A).  An FHA claim for extending a discriminatory loan begins to run from the date of the loan closing.  *Id.; Phan v. Accredited Home Lenders Holding Co.,* 2010 WL 1268013, at *3 (M.D. Fla. Mar. 20, 2010).  This suit was filed December 13, 2013. *See* [DE 1].  However, of the ten specific loans securing the identified properties alleged in the Complaint, Plaintiff fails to allege that any of those loans were made later than 2008. Comp. ¶ 160.  There are no allegations of specific loans in the Complaint that are alleged to have closed in the two years leading up to the date the suit was filed.  Comp. ¶ 160.

While Plaintiff argues that their claim is not time-barred pursuant to the continuing violation doctrine, Plaintiff has failed to allege sufficient facts to support its conclusory allegation that the specific discriminatory loan practices complained of continued into the statutory period.  The Complaint contains no allegations of any loan that was closed within the relevant limitations period.  Moreover, the Complaint alleges several different types of discriminatory actions or practices in which Defendants engaged, such as redlining and reverse redlining.  However, the City has not alleged facts evidencing that each type of alleged discriminatory practice continued into the limitations period. [3]  Rather the Complaint merely alleges a generalized policy of discrimination, which is insufficient to state a FHA claim.

### 2.  Count II: Unjust Enrichment

---

[3] The City does not allege a uniform practice of continuing conduct—that is, a particular form of discrimination by a single actor—that was the type of "discrete unlawful practice" that "continued" and so could be a basis for application of the continuing violations doctrine.  *Smithers v. Wynne*, 319 F. App'x 755, 757 (11th Cir. 2008).

When one party has conferred a valuable benefit on another in the absence of a contract, either express or implied, the doctrine of unjust enrichment creates a fictional contract, sometimes called a quasi-contract or contract implied in law, to the extent necessary to avoid clear injustice. *Adventist Health System/Sunbelt Inc. v. Medical Sav. Ins. Co.*, 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004). Under Florida Law, a claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. *Virgilio v. Ryland Group, Inc.*, 680 F. 3d 1329, 1337 (11th Cir. 2010) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n. 4 (Fla. 2004)). The benefit must be conferred directly. *Century Senior Serv. v. Con. Health Benefit Ass.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011). Moreover, the benefit accepted by defendants must be one that defendants were "not legally entitled to receive in the first place." *State Farm Fire  Cas. Co. v. Silver Star Health and Rehab*, 739 F. 3d 579, 584 (11th Cir. 2013). Finally, the scope of damages is assessed in terms of the value of the benefit conferred upon the recipient, not the cost to the provider of producing that benefit and the fair market value of it. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 807 n. 5 (11th Cir. 1999).

Here, Plaintiff does not allege sufficient facts to support its unjust enrichment claim. As a preliminary matter, Plaintiff's unjust enrichment claim fails due to the same insufficient causal allegations that were fatal to Plaintiff's FHA claim. Plaintiff alleges that the Defendants were enriched at the City's expense by utilizing benefits conferred by the City "[a]s a direct and proximate result of Defendants' predatory lending practices." Comp. ¶ 174. However, Plaintiff

fails to adequately allege the requisite causal connection between the terms of Defendants' loans and the City's decreased tax revenue and increased municipal services.  *See supra.*

Moreover, the City does not allege that it conferred a direct benefit onto Defendants to which they were not otherwise legally entitled.  First, Plaintiff fails to allege that the City conferred any *direct* benefit on the Defendants.  "[Den]ying the City revenues it had properly expected through property and other tax payments" is certainly not a direct benefit conferred from the City to Defendants.  *See* Comp. ¶ 174.  Additionally, the municipal services allegedly provided in the Complaint benefit property owners and residents of the City of Miami. Comp. ¶ 172.  Plaintiff alleges that Defendants were aware of and took advantage of the services and laws provided by the City of Miami in order to further their business.  Comp. ¶ 173.  However, any benefit received by Defendants in this manner would be derivative and insufficient for an unjust enrichment claim.  *Century Senior*, 770 F. Supp. 2d at 1267.  Next, Plaintiff fails to allege sufficient facts that demonstrate that the City conferred any benefit on the Defendants *to which they were not legally entitled*.  Municipal services provided by the City are benefits accruing to the public at large.  Plaintiff fails to allege facts to show that the Defendants, to the extent that they owned property in the City of Miami, were not also entitled to the benefit of these municipal services.  Although Plaintiff argues that the City paid for Defendants' externalities and this constitutes unjust enrichment, this Court disagrees with this position.  *See e.g., Adventist Health Sys.*, 2004 WL 6225293 at *6 n. 8 (M.D. Fla. March 8, 2004) (dismissing unjust enrichment claim because "[e]quity has never required compensation for positive externalities.").  For the above reasons, this Court dismisses Plaintiff's Count II: Unjust Enrichment.

## IV.    CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

13

1. Defendants' Motion to Dismiss [DE 33] is hereby **GRANTED**;

2. Count I – Violation of the FHA is hereby **DISMISSED WITH PREJUDICE**[4];

3. Count II – Unjust enrichment is hereby **DISMISSED WITHOUT PREJUDICE**.[5]

      **DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, this 8th day of July, 2014.

 

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to: Counsel of record

---

[4] While it is possible that an amendment could remedy the statute of limitations problems the Court has identified with Plaintiff's Complaint, it would not remedy the Plaintiff's lack of standing to bring this action under the FHA.

[5] While it does not appear that Plaintiff can overcome the deficiencies in its claim for unjust enrichment, in an abundance of caution, the Court will dismiss this count without prejudice, with leave to amend in accordance with the analysis set forth this Order. If Plaintiff chooses to file an amended complaint, the deadline to do so is July 21, 2014. As currently pled, Plaintiff's unjust enrichment claim is pled as a supplemental jurisdiction state law claim. The Court takes no position, at this time, as to whether it would exercise supplemental jurisdiction over a complaint that only contains a state law claim.