**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:13-CV-24506-WPD-LSS

CITY OF MIAMI, a Florida municipal
corporation,

          Plaintiff,

    v.

BANK OF AMERICA, N.A.; and
COUNTRYWIDE BANK, FSB,

          Defendants.

**DEFENDANTS' MOTION TO DISMISS**
**THIRD AMENDED COMPLAINT WITH PREJUDICE**
**AND REQUEST FOR HEARING**

Defendant Bank of America, N.A., for itself and as successor by de jure merger with Countrywide Bank, FSB ("Bank of America"), hereby moves to dismiss the Third Amended Complaint filed by the City of Miami (the "City") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

The Court has already dismissed this Fair Housing Act ("FHA") case twice, and the City's latest amendment does not cure any of the pleading deficiencies identified in the Court's last dismissal order of March 17, 2016. *See City of Miami v. Bank of America Corp.*, No. 13-24506, 2016 WL 1072488 (S.D. Fla. Mar. 17, 2016) (the "SAC Dismissal Order"). Instead, the City's Third Amended Complaint ("TAC") is nearly identical to the recently-dismissed Second Amended Complaint ("SAC") and largely adds nothing more than conclusory boilerplate. Importantly, the amendments the TAC does offer do not supply the type of *specific* factual material that this Court (and the Eleventh Circuit) previously found necessary for the City to state a claim.

Based on well-established pleading requirements for FHA claims and the Eleventh Circuit's decision in *City of Miami v. Bank of America Corp.*, 800 F.3d 1262 (11th Cir. 2015) ("Appeal Op."), this Court's SAC Dismissal Order identified three dispositive pleading defects in the City's last complaint:

1. The City's claim was barred by the FHA's two-year statute of limitations. The Court reached that holding because the City did not allege in the SAC any specific facts to show that there was at least one instance where Defendants committed lending discrimination within the statutory window. The Court found the SAC insufficient because it had no detail, including "(a) any borrower's specific minority status, i.e., Hispanic, African-American, etc., (b) what type of loan was made, (c) how that loan was supposedly discriminatory, (d) when the loan closed, or (e) what basis the City has to claim the loan will default or enter foreclosure (and thus plausibly injure the City at some point)." SAC Dismissal Order at 3.

2. The City failed to "allege that it suffered any injury" from loans made within the limitations period, or that it will suffer any injury imminently. *Id.* at 4.

3. The City failed multiple pleading requirements for disparate impact claims, as established by the Supreme Court's recent decision in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015). *Id.* at 4-5.

Each of these defects remains in the TAC, so it, too, should be dismissed. As the City has now tried, and failed, to state an actionable claim four times, the dismissal should be with prejudice. *See* ECF Nos. 1 (initial complaint), 72-1 (proffered complaint), 84 (SAC), 102 (TAC).

First, the TAC continues the City's repeated failures to allege sufficiently that Defendants made discriminatory loans after December 13, 2011, and that it has a claim based on those loans. As the Eleventh Circuit and this Court previously found, both elements are necessary to show that the City has a timely claim, based on the requisite actionable conduct and injury.  Appeal Op., 800 F.3d at 1283-84; SAC Dismissal Order at 3-4.  The only loans the City identifies within the limitations period correspond to the same four addresses that showed up in the SAC. *Compare* TAC ¶ 124 *with* SAC ¶ 123.  While addressing some of the factual deficiencies identified above (such as by finally alleging the borrowers are minorities), the TAC does not explain what it was about any of these four in-period loans that made them discriminatory *and* likely to default *and* go into foreclosure. *See id*. at ¶ 124 & nn.39-42.

The City does not actually allege plainly or directly that any one of these particular four loans violated the FHA.  Instead, it states only that *in-period loans* to minorities are "deemed to violate the FHA" when they were more expensive "based upon the regression analysis described earlier." *Id.* ¶ 124.  The TAC says nothing about *these four loans'* cost or terms, either in absolute terms or relative to other loans made during the limitations period.

Similarly, the City does not allege that *these four loans* have been, or even that they will be, foreclosed.  The TAC states only on "information and belief, as well as historic experience, a significant number of . . . discriminatory loans . . . will result in foreclosures." *Id.*  Again, that does not allege any plausible basis to claim that *these four loans* give rise to the City's claimed damages, and that it is an aggrieved person with a timely claim under the FHA.

The City's failure to allege plausibly what is required arises because its pre-pleading investigation apparently has been completely limited to statistical analysis of data.  The failures only demonstrate that it is time for this lawsuit to end because the City does not know of a single identifiable person in Miami who was discriminated against in the two years prior to suit.

Second, and relatedly, the TAC should be dismissed for the second reason this Court identified in the SAC Dismissal Order: that the City does not show that it actually has been injured by any discriminatory loan made within the limitations period. *See id*. at 4.  Alleging that unnamed loans may default in the future, even a "significant number" of them, does not show that the City is aggrieved, as that term is defined by FHA – which requires an actual or imminent injury. 42 U.S.C. § 3602.

Third, on the *Inclusive Communities* grounds for dismissal of the disparate impact claim, the pleading defects highlighted in the SAC Dismissal Order all remain unrectified.  This Court

identified four different ways that the last complaint failed the *Inclusive Communities* pleading test: (i) failure to identify a specific facially neutral policy, (ii) failure to identify how any policy was "artificial, arbitrary, and unnecessary," (iii) failure to meet the "robust causality test," and (iv) failure to identify a disparate impact occurring within the limitations period. SAC Dismissal Order at 4. The TAC corrects none of these deficiencies (other than through adding quotes of the key phrases from *Inclusive Communities*) and, in fact, now openly concedes that the City cannot show a disparate impact within the limitations period. *See* TAC ¶ 125. These failures are dispositive of the City's disparate impact claim.

The City's four equally defective complaints to date demonstrate the City cannot and will never state a cognizable claim. *See* ECF Nos. 1 (initial complaint), 72-1 (proffered complaint), 84 (SAC), 102 (TAC). Four complaints are enough. The time has come for this Court to end this baseless lawsuit through a dismissal with prejudice.

## BACKGROUND

As this Court has ample familiarity with this matter, Bank of America will not belabor the factual background, except to note that the City accuses it of a long history of discriminatory mortgage lending and that every paragraph in its complaint except one concerns the period of time outside the limitations period. *See* TAC ¶ 124. The evolution of this particular paragraph is the main amendment pertinent to the instant motion and the City's attempts to state a claim.

In its original complaint, the City did not challenge a single loan made during the limitations period. The FHA has a two-year statute of limitations, and the complaint was filed on December 13, 2013, so the City needed to allege some kind of statutory violation after December 13, 2011, in order to have a timely claim. Instead, the City purported to challenge the Defendants' lending activities in the "2004 to 2012" period *en masse* (*e.g.*, Compl. (ECF No. 1) ¶ 121), but did not say that there were any discriminatory loans made after December 13, 2011. To the contrary, it listed the addresses of ten properties which it claimed corresponded to discriminatory loans made "between 2004-2012," but conspicuously declined to specify exactly when in that period those loans were made. Compl. ¶ 160.

On July 9, 2014, this Court dismissed the initial complaint on multiple grounds. With respect to the timeliness issue, the Court held that "[t]he Complaint contains no allegations of any loan that was closed within the relevant limitations period" and also failed to allege that any "discriminatory practice continued into the limitations period." ECF No. 71 at 11. The Court

denied leave to file a proposed First Amended Complaint (ECF No. 72-1) on grounds of futility. ECF No. 76.

The City appealed to the Eleventh Circuit, which disagreed with other aspects of this Court's decision, but affirmed its disposition of the limitations issue.  The Eleventh Circuit emphasized the City's "fail[ure] to allege that any of the [ten allegedly discriminatory] loans closed within the limitations period (between December 13, 2011 and December 13, 2013)." Appeal Op., 800 F.3d at 1284.  The Court further noted that the City had "provided no specific information (e.g., the type of loan, the characteristics that made it predatory or discriminatory, when the loan closed, when the property went into foreclosure, etc.) for each address." *Id*. at 1283-84.  The Court remanded the case to give the City an opportunity to cure these failures in an amended complaint, repeating that it must "identify FHA violations within the limitations period" to avoid dismissal. *Id*. at 1285.  Finally, the Court instructed the City that its amended pleading "must take into account" *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), which established that FHA claims require a "robust" causal connection between the claimed racial disparity and "artificial, arbitrary, and unnecessary barriers" established by the defendant. *Id*. at 2523-24.

The City filed the SAC on November 30, 2015.  The SAC purported to allege that there were discriminatory loans made within the limitations period, but said absolutely nothing about them.  The new allegation read, in full:

> Bank of America has continued to issue discriminatory loans in Miami subsequent to December 13, 2011.  A sample of property addresses corresponding to the issuance of these loans is set forth below:
>
> > 1350 NW 8th Ct., Unit C-3, 33136
> > 701 Bricknell Key Blvd., Unit 2408, 33131
> > 1350 NW 8th Ct., Unit B3-5, 33136
> > 800 N. Miami Ave., Unit E-1005, 33136

SAC ¶ 124.[1]  The Court understandably found this allegation "too conclusory to meet the *Twombly/Iqbal* pleading standard" and dismissed the SAC.  The Court reasoned:

---

[1] Interestingly, the proposed (but never permitted) First Amended Complaint identified seven addresses allegedly associated with discriminatory loans made within the limitations period, but only *one* of those seven addresses corresponds with the four addresses later listed in the SAC and now in the TAC.  *Compare* ECF No. 72-1 ¶ 137 *with* SAC ¶ 124, TAC ¶ 124.  The City's indiscriminate adding and dropping of addresses allegedly associated with discriminatory loans obviously raises Rule 8 concerns, and by itself justifies the requirement that the City is obligated

-4-

> [T]he amendment suffers from the same lack of specifics that the Eleventh Circuit noted infected a similar property list contained in the initial Complaint—it "provide[s] no specific information (e.g., the type of loan, the characteristics that made it predatory or discriminatory, when the loan closed, when [and if] the property went into foreclosure, etc.) for each address."  Further, it would be impossible to conclude that Plaintiff plausibly alleged that Defendants violated the FHA within the limitations period with regard to these four asserted mortgage loans, as Plaintiff does not even allege that these loans were made to minority borrowers, let alone (a) any borrower's specific minority status, i.e., Hispanic, African-American, etc., (b) what type of loan was made, (c) how that loan was supposedly discriminatory, (d) when the loan closed, or (e) what basis the City has to claim the loan will default or enter foreclosure (and thus plausibly injure the City at some point).

SAC Dismissal Order at 3.

In addition – separate and apart from the issue of whether the City had plausibly pled discriminatory loans – the Court noted that the City had also failed to "allege that it suffered any injury from the four discriminatory loans," as none of the loans was alleged to have "end[ed] up in foreclosure" or "reduce[d] property tax values or require[d] additional city services."  *Id*. at 4.  Instead, the City had simply speculated that the loans (or other loans) could go into foreclosure one day and cause it injury at some unspecified future date.  The Court found that theory insufficient to plead an "imminent" or "certainly impending" injury as required by the FHA.  *Id*. (quoting *Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 959 (8th Cir. 2001)).

Finally, the Court found that the City had not satisfactorily complied with the Eleventh Circuit's instructions to take the *Inclusive Communities* decision into account.  The City had not alleged any "artificial, arbitrary, and unnecessary" "facially-neutral policy used by Defendants" during the limitations period, or explained how there was a "robust causal[]" connection between such a policy and the loans at issue.  *Id*. at 4.

The Court granted leave to file one more amended complaint.  The currently operative TAC followed.

In the TAC, the City attempts to expand on the allegations in the linchpin ¶ 124 of the SAC – slightly.  Here is what it alleges:

> Bank of America has continued to issue discriminatory loans to minority borrowers in Miami subsequent to December 13, 2011.  These loans are deemed to violate the FHA and are discriminatory because they were issued to minority

---

to provide more factual detail for the loans it now asserts were timely acts of discrimination. Its serial failure to comply with this basic requirement warrants dismissal with prejudice.

borrowers and were more expensive than the loans issued to similarly situated white borrowers during the limitations period based upon the regression analysis described earlier.  Upon information and belief, as well as historic experience, a significant number of the properties corresponding to issuance of discriminatory loans subsequent to December 13, 2011 will result in foreclosures or other adverse events that will cost the City a loss of tax revenues and significant remediation costs.  A sample of property addresses corresponding to the issuance of these loans to minority borrowers all of which closed (i.e. "originated") during the limitations period is set forth below:

> 1350 NW 8th Ct., Unit C-3, 33136[]
> 701 Brickell Key Blvd., Unit 2408, 33131[]
> 1350 NW 8th Ct., Unit B3-5, 33136[]
> 800 N. Miami Ave., Unit E-1005, 33136[]

As the Court can see, the City still relies on the same four properties.  But in footnotes to Paragraph 124, it now identifies the borrowers as Hispanic or African-American, states the loans were "conventional" and includes the closing dates of the loans.[2]  TAC ¶ 124 nn.39-42.[3]  The TAC does not say that any of *these four loans* was discriminatory.  The City also does not claim that any of the four identified loans went into default or foreclosure.  *See id.* ¶ 124.

The City has also added several boilerplate allegations to the TAC.  As to the limitations issue, it has tacked on the conclusory sentence in several places that "[u]pon information and belief" things alleged to have occurred long before the limitations period "have continued into the present."  TAC ¶¶ 45, 49, 54, 57.  To address *Inclusive Communities*, the TAC pronounces various alleged practices to be "facially neutral business policies and practices" and asserts that these were "artificial, arbitrary, and unnecessary," as though simply repeating that mantra is talismanic.  TAC ¶¶ 1, 37, 90, 128.

## ARGUMENT

**I.     The TAC Still Fails to Allege a Plausible, Timely Violation of the FHA.**

The modifications the City has made to its pleading do not remedy the fundamental defect, identified by both the Eleventh Circuit and this Court, that the City has not alleged that Bank of America engaged in at least one act of discrimination within the two years prior to suit.

---

[2] Albeit incorrectly. Bank of America has been unable to match the alleged closing dates to the dates in its own loan records.

[3] *See, e.g.*, *id.* n.39 ("This borrower is Hispanic and received a conventional loan with a loan origination date of April 17, 2013. Plaintiff has the name for this borrower but has omitted it for privacy reasons. In the event this Court requires inclusion of the borrower names Plaintiff will file a complaint under seal with this information.").

Its failure shows both in the City's inability to allege certain facts which this Court and the Eleventh Circuit identified as lacking in its prior complaints and in the City's more-fundamental failure on any measure to allege any actual timely act of discrimination.

### A.   The TAC contains only a single paragraph relevant to whether the City has stated a timely FHA claim – it fails.

Initially, it is noteworthy that there continues to be a disconnect between the alleged lending conduct the City focuses on as discriminatory in the TAC and the types of loans the City alleges were actually made within the FHA's limitations period.  In all four of the City's complaints, it has identified a specific list of loan products and features that it believes to be discriminatory:

> [T]he types of loans that Bank of America issued to minorities when they otherwise qualified for less expensive and less risky loans include the following: high-cost loans (i.e., loans with an interest rate that was at least 3% above the Treasury rate prior to 2010 and 1.5% above the prime mortgage rate thereafter), subprime loans, interest-only loans, balloon payment loans, loans with prepayment penalties, negative amortization loans, no documentation loans, higher cost government loans, including FHA and VA loans, and HELOCs, and/or ARM loans with teaser rates (i.e., lifetime maximum rate greater than initial rate +6%).

*E.g.*, TAC ¶ 58 (footnotes omitted).

But, the City does not allege that *any* of these loans were made within the limitations period by Bank of America and, in fact, identifies the four "timely" loans as "conventional loans."[4]  So virtually all of the TAC must be ignored for purposes of answering the threshold question already flagged: Can the City "plead a cognizable claim of an FHA violation *within* th[e] limitations period"?  SAC Dismissal Order at 3 (emphasis supplied).

The only exception is TAC Paragraph 124, which alleges that some loans made to minority borrowers in the limitations period were more "expensive" than loans given to non-minority borrowers.  So, the City's entire case rests on whether Paragraph 124 now provides the necessary factual detail to state a claim that there was at least one discriminatory act in the limitations period.  It does not.

---

[4] The term "conventional loan" is simply an umbrella term that describes every loan type except government-insured (FHA/VA) loans.  TAC ¶ 124 nn.39-42.

**B.      The City does not allege any factual support for how the four limitations period loans were discriminatory.**

The fundamental plausibility failure in the TAC is that the City still fails to allege "the characteristics that made [the loans] predatory or discriminatory."  SAC Dismissal Order at 5.  Both this Court and Eleventh Circuit identified a list of facts that should be pled in order to support a plausible claim that a specific act of discrimination occurred within the FHA's two-year limitations period.  *See* Appeal Op., 800 F.3d at 1283-84; SAC Dismissal Order at 3.  To address those factors, the City does finally allege some specifics, using the same four loans from the SAC: loan closing dates, property addresses, that each was a "conventional" loan, and that the borrower was an African-American or Hispanic.  TAC ¶ 124 nn.39-42.

But as to the crucial factor of "the characteristics that made it predatory or discriminatory," Appeal Op., 800 F.3d at 1283-84, and "how that loan was supposedly discriminatory," SAC Dismissal Order at 3-4, Paragraph 124 fails.  The City merely states, in conclusory fashion, that unidentified "discriminatory loans" made after 2011 "are deemed to violate the FHA and are discriminatory because they were issued to minority borrowers and were more expensive than the loans issued to similarly situated white borrowers during the limitations period based upon the regression analysis described earlier."  TAC ¶ 124.  This allegation does not plainly state a claim that *these four loans* were discriminatory because they were more expensive or for any other reason.  Instead, all that is alleged is (a) that there allegedly are some loans made to minorities that are discriminatory and (b) these four loans were made to minorities, within the relevant time period.  This is plainly not enough factual detail to support an intentional discrimination claim.

The City's failure to allege facts to show that these particular loans were actually more expensive than others is telling.  Apparently, it cannot do so because its conclusions as to discrimination are based on "regression analysis," a statistical mechanism that enables statisticians to give opinions about the characteristics of a population.  *See*, *e.g.*, *Eastland v. Tennessee Valley Auth.*, 704 F.2d 613, 621 (11th Cir. 1983) (regression analysis is a "method of estimating").  Here, though, the law requires the City to allege what actually happened as to at least one particular loan in that population.  The City has not – and cannot – do so.

The City may contend that it really did allege that these particular loans were "more expensive," and so discriminatory.  But even if the TAC is construed in this fashion, the TAC still falls short.  To meet the pleading standard detailed by this Court (and the Eleventh Circuit),

the City needs to provide more factual detail than just a two-word description that four loans were "more expensive."  What was the discrimination involved with respect to each of these specific loans?  What about them made them more expensive?  What loans were they more expensive than?  The TAC does not even attempt to answer any of these questions.  This Court has already firmly rejected the City's contention that the Court "should decline to examine the characteristics of the four allegedly discriminatory loans alleged in the SAC."  *See* SAC Dismissal Order at 3.  Yet, even in the face of this holding, the City still refuses to provide the Court with any meaningful characteristics or information regarding *these four loans* that would suggest they were in fact discriminatory in some form.  The TAC must be dismissed once again – and with prejudice – because "the City does not plead plausibly that Defendants violated the FHA within the limitations period."  SAC Dismissal Order at 4.[5]

Further, the "more expensive" allegation is not plausible because the City alleges that in-period loans are more expensive "based upon the regression analysis described earlier."  TAC ¶ 124.  But the "regression analysis" described in the TAC (¶¶ 15, 60-62, 123) says nothing about loans made "during the limitations period" – it encompasses loans made "from *2004 to 2012*."  TAC ¶ 60 (emphasis supplied).  As this Court held in the SAC Dismissal Order (at 5 n.3), this analysis does not tell the Court anything about what conduct actually happened within the two-year limitations period since December 13, 2011.  *See Cobb Cty. v. Bank of Am. Corp.*, No. 15-4081, slip op. at 25 (N.D. Ga. May 2, 2016) (attached as Exhibit 2) (Plaintiffs fail to "allege a violation within the limitations period with the requisite specificity" where "Plaintiffs point to statistical data devoid of any specific facts of a particular claim") (citing Appeal Op.).  So, there are no creditable *factual* allegations in the TAC that the City has actually identified

---

[5] *See also, e.g.*, *Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179, 2015 WL 5542992, at *17 (N.D. Cal. Sept. 17, 2015) (dismissing FHA claim "because Plaintiffs do not allege their income anywhere . . . [so] there is no factual basis for determining Plaintiffs' similarity to other borrowers."); *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 533 (S.D.N.Y. 2015) (dismissing claim where "there are no allegations whatsoever as to [similarly situated borrower's] qualifications or creditworthiness, and, as noted above, Plaintiffs fail to provide details about their qualifications or creditworthiness"); *Simpson v. All Saints & Saint Lukes Episcopal Home for the Retired*, No. 14-cv-4106, 2015 WL 7313871, at *3 (N.D. Ga. Nov. 20, 2015) (dismissing discrimination claim where plaintiff "did not allege sufficient facts to show that he and [whites who were allegedly paid more] were similarly situated").  The City's failure to include this information in its complaint is inexcusable at this point in the case.  If the City knows the cost of the loans and the borrowers' credit characteristics, it is capable of alleging that information.  If it does *not* know it, then it has no grounds to sue.

loans made "during the limitations period" that were less expensive than any of the four identified loans.

The fact that two of the four loans were made in 2012 does not save those loans from this concern.  *See* TAC ¶ 124 nn.41-42 ("1350 NW 8th Ct., Unit B3-5, 33136"; and "800 N. Miami Ave., Unit E-1005, 33136").  The regression analysis allegations, at best, only speak to the lending conduct over an eight-year period and combining two different corporate families (Bank of America and Countrywide).  *Id.* ¶¶ 60, 123.[6]  Borrowers who took loans in 2012, *by definition*, are not similarly situated to borrowers who took loans in 2004 or 2006 or 2008.  Loan rates change, as do federal lending regulations, housing values, and a host of other relevant factors.  To make a plausible case that these loans are "more expensive" than those made to "similarly situated white borrowers," the City must specifically compare to similarly situated white borrowers, which means at the very least borrowers who took out loans around the same time.  *Cf. Allen v. Prince George's Cty., Md.*, 737 F.2d 1299, 1304 (4th Cir. 1984) (statistical data irrelevant when "skewed by the inclusion of employees hired before the applicable date").[7]

Even if one were to blindly accept the City's conclusory "more expensive" allegation, it does not meet the pleading standard for a claim of intentional discrimination, which requires evidence of actual racial animus, not just an outcome disparity.  *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) ("Under Eleventh Circuit law, only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.") (citations and quotations omitted); *Broner v. Washington Mut. Bank, FA*, 258 F. App'x 254, 256 (11th Cir. 2007) (no FHA claim where plaintiff failed to allege sufficient facts that she was targeted because of her race); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1529-30 (7th Cir. 1990) (intentional discrimination "implies consciousness of race, and a purpose to use race as a decision-making

---

[6] Though the City attempts to make its statistics seem more reliable by referring to the data as belonging only to "Bank of America," the statistics are identical to those cited in the City's original complaint (and the SAC), which combined data for both Countrywide and Bank of America.  *Compare*, *e.g.*, SAC ¶ 63 *with* Compl. ¶ 107; TAC ¶ 75 *with* Compl. ¶ 121.

[7] A simple analogy can illustrate the point: the last nine years of Super Bowl coin tosses.  From 2008 to 2016, there was a 66.6% chance of heads – but that statistical imbalance combines a 71% chance of heads in the 2008-2014 period with a normal 50% chance of heads in the 2015 and 2016 games.  If this data set were being proffered to demonstrate a statistical imbalance in the post-2015 period – which is just like what the City is doing here – it would be woefully insufficient on its face.

tool" where "discriminatory motive is critical"; court "should not confuse . . . a difference in outcome [with] a difference in treatment").

The Eleventh Circuit made clear that conduct before the limitations period is irrelevant unless "the City is able to identify FHA violations within the Limitations Period." Appeal Op., 800 F.3d at 1285. As this Court held, "the prerequisite" for applying the continuing violation doctrine in the first place is "the identification of at least one timely and actionable claim of discrimination which serves as an anchoring FHA claim to which earlier, untimely claims might be tethered." SAC Dismissal Order at 4; *accord Inclusive Communities*, 135 S. Ct. at 2523. Like the complaints that preceded it, the TAC fails this test. It must be dismissed on this ground.

### C.    The City also fails to allege that any of the post-2011 loans went into foreclosure.

The TAC's amendments are also insufficient because they do not identify – as required by this Court and the Eleventh Circuit – "when the property went into foreclosure." Appeal Op., 800 F.3d at 1284; SAC Dismissal Order at 3. The City still fails to allege this, because it *cannot* allege it. The City all but concedes that none of the loans it calls discriminatory went into foreclosure, and instead only speculates that some unspecified *other* loans can be expected to have unspecified bad things happen to them at some unspecified future date. *See* TAC ¶ 124 (asserting that "a significant number of the properties corresponding to issuance of discriminatory loans subsequent to December 13, 2011 will result in foreclosures or other adverse events").

In dismissing the City's prior complaint, this Court specifically noted that the City had failed to allege "what basis the City has to claim the loan will default or enter foreclosure (and thus plausibly injure the City at some point)." SAC Dismissal Order at 3. It still fails to do this.

Even the allegation as to unidentified loans is not enough to meet Rule 8 standards: it is only on "information and belief" and states only that "a significant number of the properties" will be foreclosed. TAC ¶ 124. This is neither specific in magnitude nor sufficient to allege that more "discriminatory" loans will be foreclosed than in the general population.

The City has not even attempted to expand on its previous conclusory allegations. For this reason as well, the TAC must be dismissed.[8]

---

[8] The City sues Countrywide Bank, FSB, an entity the City alleges was merged into Bank of America, N.A. in 2009 and "ceased to exist." TAC ¶ 25. Quite obviously, then, that entity should be dismissed for the additional reason that it took no action within the statutory period.

II.     **The TAC Still Fails to Allege an Injury to the City.**

A timely violation of the FHA is only part of what the City must plead to have a timely claim.  It also must allege a timely injury.  The TAC does not allege such an injury, which provides an independent basis for dismissal.

As this Court ruled the last time around, "[t]he plain statutory language of the FHA provides that a plaintiff has no FHA cause of action unless the person is 'aggrieved' by the alleged discrimination."  SAC Dismissal Order at 4.  Indeed, the statute itself permits suits only by "aggrieved persons," a term it defines as one suffering actual injury or injury that is about to occur.  42 U.S.C. § 3602.  A discriminatory loan, standing by itself, "aggrieves" the borrower. But it does not aggrieve the City, even under the City's own theory of the case, unless a whole other chain of events ensues.  This chain of events starts with borrowers defaulting on their loans, then being unable to refinance them, and then having the properties go through foreclosure, "sit vacant for months (or years)," "deteriorate from neglect," and lower "the values of nearby homes," thus allegedly "reducing [the City's] tax bases and leading to increased vandalism and crime."  TAC ¶¶ 10, 18.  The City does not – and cannot – allege even the first link in this chain as to any of the four properties on which it centers its claims.

For this reason, the City simply does not have an actionable claim for relief under the FHA based on conduct occurring within two years prior to the filing of the suit.  As such, the City fails to meet the requirements of the SAC Dismissal Order – and lacks both statutory and constitutional standing to sue.

The City tries to save its suit with rank speculation that foreclosure of some post-2011 loans will happen at some point:

> Upon information and belief, as well as historic experience, a significant number of the properties corresponding to issuance of discriminatory loans subsequent to December 13, 2011 will result in foreclosures or other adverse events that will cost the City a loss of tax revenues and significant remediation costs.

TAC ¶ 124.  This is not enough, for the reasons this Court already set forth:

> Even those cases that entertain an FHA suit on the basis of a future injury require that the injury must be "imminent" and "certainly impending."  However, in the instant action, the SAC fails to allege that any supposed future injury related to the four discriminatory loans alleged to have violated the FHA during the limitations is imminent or about to occur.

SAC Dismissal Order at 4 (quoting *Paraquad*, 259 F.3d at 959).  Based on this failing, the Court ruled that "the SAC, like the earlier complaint, is again subject to dismissal on statute of

limitations grounds." *Id*.  The same is true of the TAC.

The FHA by its plain language does not permit suit by someone who cannot show injury "is about to occur."  Other courts have reached the same conclusion that without concrete and impending injury, the claim is not actionable.  *E.g.*, *City of Miami Gardens v. Wells Fargo & Co.*, No. 14-22203, 2014 WL 6455660, at *1 (S.D. Fla. Oct. 1, 2014) (Moreno, J.) (dismissing FHA claim for failure to allege "the precise number and dates of foreclosures, and the specific costs to the City"); *City of L.A. v. Bank of Am. Corp.*, No. 13-9046, 2015 WL 4880511, at *5 (C.D. Cal. May 11, 2015) (granting summary judgment to Bank of America because City had no "evidence that it suffered an 'injury in fact' during the limitations period"); *see also Spokeo Inc. v. Robins*, No. 13-1339, --- S. Ct. ---, 2016 WL 2842447, at *7-8 (May 16, 2016) (holding concrete injury needs to be adequately alleged and noting not all potential statutory violations "cause harm or present any material risk of harm").  Even if the City had a plausible claim of discrimination – and it does not – its failure to allege a timely injury is fatal.

Moreover, at least one of the City's two theories of injury would not be capable of sustaining this lawsuit, even if it were not completely speculative (it is).  As noted, the City claims that it is injured because it "must provide costly municipal services for foreclosure properties in minority neighborhoods" which "would not have been necessary if the properties had not been foreclosed upon."  TAC at 29 and ¶ 111.  The City does not allege that it has spent one dime on "costly municipal services" at a property that secured a discriminatory loan made since December 13, 2011.

Even setting that failure aside, the City is barred as a matter of law from recovering for such "municipal services."  In a prior case in which Miami-Dade County filed suit "to recover the costs incurred in providing police, fire, emergency, court, prison and other related services," a Florida court held "[m]unicipal costs of providing public services are not recoverable as a matter of law."  *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *1-2 (Fla. Cir. Ct. Dec. 13, 1999) (citations omitted), *aff'd*, 778 So. 2d 1042 (Fla. 3d DCA 2001).  This doctrine has also been applied to bar suits to recover costs incurred in responding to "building code" and "safety" violations.  *Torres v. Putnam Cty.*, 541 S.E.2d 133, 136 (Ga. Ct. App. 2000).  That the City may have a general right to sue under the FHA is not the requisite authorization under Florida law to recover every type of damage it may claim.  *Cf. Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 979 (9th Cir. 2008) (statutory cause of action under RICO not a sufficiently "explicit" authorization for government to recover for "services it provides").

**III.    The TAC Still Fails to Meet the Supreme Court's *Inclusive Communities*
         Requirements for an Initial Pleading.**

As this Court held in the SAC Dismissal Order, the Supreme Court's *Inclusive
Communities* decision requires that disparate impact claims pass at least four hurdles: the plaintiff
must "(1) show statistically-imbalanced lending patterns which adversely impact a minority
group; (2) identify a facially-neutral policy used Defendants; (3) allege that such policy was
'artificial, arbitrary, and unnecessary;' and (4) provide factual allegations that meet the 'robust
causality requirement' linking the challenged neutral policy to a specific adverse racial or ethnic
disparity."  SAC Dismissal Order at 4 (quoting *Inclusive Communities*, 135 S. Ct. at 2522-24).

When this Court ruled on the City's prior pleading, it held that the City "meets the first of
these pleading requirements," but "fails to meet the second, third, and fourth."  *Id*.  The TAC
does not remedy these failures, despite this Court and the Eleventh Circuit having put the City on
full notice of what it must plead to survive dismissal.  Instead, the new allegations in the TAC
gesture at the *Inclusive Communities* requirements only in boilerplate – and reveal that the City
has not alleged *any* of the necessary elements.

**1. *Statistical imbalance.*** Although the Court previously noted that the SAC pled a
statistical imbalance in general, the SAC Dismissal Order also identified that the SAC was
defective because it failed to "demonstrate that there was any disparate impact *during the two
year limitations period*."  SAC Dismissal Order at 5, n.3 (emphasis added).  This defect remains
present and uncured.  That is well enough of a basis to dismiss the TAC again.

There is also a related failure: the City itself says that it is proffering its regression
analysis to support its claim of *intentional* discrimination – *not* disparate impact.  *See* TAC ¶ 64
(describing the regression analysis as showing that "the disparities in Miami are not the result of,
or otherwise explained by, legitimate *non-racial* underwriting criteria") (emphasis added).  A
disparity created by "non-racial" underwriting criteria is the *sine qua non* of a disparate impact
claim. If the underwriting criteria were racial, then the claim would sound in disparate treatment.
Thus, the TAC fails to state a disparate impact claim because it does not identify a racial
disparity during the limitations period and because it does not claim any statistics support an
*unintentional* racial disparity.

**2. *Facially neutral policy.*** The TAC also fails to allege any "facially neutral" policy.
Instead, the TAC's theory remains that Bank of America was intentionally discriminatory, which
this Court already held is grounds for dismissal.  SAC Dismissal Order at 4.  The TAC only

attempts to obscure this continuing defect through the expedient act of: (a) relabeling as facially neutral all the policies it previously labeled facially discriminatory, and (b) adding new, but equally deficient purported policies.

As to (a), the SAC previously included a laundry list of eleven alleged policies and practices, and claimed that they were all manifestations of a "united" practice of "steering minority borrowers into disadvantageous loans." SAC ¶¶ 41, 127. "Steering," however, is an intentional act of discrimination, not a facially neutral policy that happens to have the unintended effect of disparate lending patterns. *See* SAC Dismissal Order at 4 (citing Appeal Op., 800 F.3d at 1275 ("steering" is "guiding prospective buyers . . . based on the buyer's race"); *Village of Bellwood*, 895 F.2d at 1529, 1533 (concluding that there is no such thing as "unintentional racial steering"; "either the defendants deliberately tried to alter their customers' preferences," or they did not)). This Court agreed, dismissing the City's disparate impact claim in the SAC, in part, because "the City's contentions that minority borrowers were 'targeted' are comprised of allegations that minorities were intentionally discriminated against, not allegations that a neutral policy or policies produced a statistical imbalance." SAC Dismissal Order at 4.

The City attempts to cure this deficiency by leaving its underlying factual contentions essentially unchanged, but replacing some of its adjectives, like its use of the word "steering." As the following table demonstrates, this effort is a textbook example of precisely what *Twombly* and *Iqbal* do not permit, the pleading of mere labels and conclusions in an effort to recite "magic words" without pleading the real substance. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009):

| SAC ¶ 41 | TAC ¶ 37 |
| --- | --- |
| These practices are united because they represent manifestations of the same continuous and unbroken practice of <u>steering minority borrowers into disadvantageous loans</u>. | These practices are united because they represent manifestations of the same continuous and unbroken practice of <u>engaging in facially neutral business policies and practices that created an "artificial, arbitrary, and unnecessary" barrier to fair housing opportunities for minority home purchasers and owners.</u> |

The City is not pleading new facts, just changing its characterization of the existing factual allegations which this Court already held insufficient to state a claim.

The City's attempt to identify "new" policies does not provide any other ground to save the TAC from dismissal.  *See* Redline of SAC and TAC, attached as <u>Exhibit 1</u>.  The TAC's revisions to the identified policies fall into three, equally defective camps:

1. They are non-substantive wording changes to carry-over policies from the SAC that this Court has already ruled on in the SAC Dismissal Order.  TAC ¶ 37 c, d, e, f, h, i.

2. They identify new policies that are obviously intentionally discriminatory (if they were accurate, which they are not).  TAC ¶¶ 37g ("marketing certain more expensive or riskier loan products to…minority neighborhoods"), 37j ("creating a compensation scheme incentivizing employees to issue discriminatory loans").

3.  They identify new "policies" that are not policies at all, but are rather the lack of a policy.  TAC ¶ 37a ("failing to adequately monitor the Bank's practices regarding mortgage loans"), 37b ("failing to underwrite loans based on traditional underwriting criteria"), 37k ("failing to monitor and ensure compliance with federal fair lending law laws").[9]

<u>Exhibit 1</u>, at pp. 14-15.  None of these amendments identifies a specific, facially-neutral policy that could form the predicate for a disparate impact claim under *Inclusive Communities*.

The City obviously wants to avoid having to choose between a disparate impact theory of recovery and a disparate treatment theory of recovery, in a textbook case of impermissible "shotgun" pleading.  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 n.12 (11th Cir. 2015).  Dismissing a similar lawsuit brought against Bank of America by three Georgia counties, the Northern District of Georgia recently commented: "it is possible to bring both a disparate treatment and a disparate impact claim in the same litigation if the claims are conceptually and factually distinct," but "a plaintiff may not bring both claims . . . when the allegations have been conflated."  *Cobb Cty.*, slip op. at 30 n.17 (citation and internal quotation marks omitted).  *Cobb* found the counties' allegations fatally conflated because "Plaintiffs' only response" to Bank of America's argument that they failed to satisfy the *Inclusive Communities* standard

> is that they have alleged a variety of practices that, depending on how they are implemented and the intent of the Defendants, can also be facially race neutral. And while that may be the case, it is not what Plaintiffs alleged in their Complaint.  Instead, they continuously allege intentional decisions [by] Defendants to discriminate against minorities rather than pleading a facially neutral policy as required.

_____

[9] There is no basis on which the City can contend that these types of non-policies caused any alleged disparity.  In particular, a statistical disparity cannot be *caused* by a failure to monitor and identify that same statistical disparity.  That is circular illogic.

*Id*. at 31.  The same is true of the TAC here, and pasting in a few boilerplate allegations of neutrality does not change this.

The City also fails to identify when *any* of the challenged policies and practices were in effect or to allege that a particular policy was in place after December 13, 2011.  This omission is significant, for the City concedes that many of the alleged practices have changed over time or ceased and it does not allege that any of the loan products it identifies as discriminatory were actually made within the limitations period.  *Supra* Section I(A).  The City has also failed to make any effort to disaggregate the practices it previously attributed to Bank of America and Countrywide as one undifferentiated defendant (despite their being separate entities until 2008) into Countrywide practices (irrelevant now that Countrywide has been dismissed) and Bank of America practices (relevant, but only if they continued through December 13, 2011).  In the absence of any factually grounded account of which policies (if any) were followed by Bank of America on or after December 13, 2011, the City has failed to allege a facially neutral policy by a defendant on which a disparate impact theory could rest.

**3.** ***"Artificial, arbitrary, and unnecessary" policy.***  The City's failure to identify a facially neutral policy also prevents it from meeting the related requirement that it identify how such a policy is "artificial, arbitrary, and unnecessary."  *Inclusive Communities,* 135 S. Ct. at 2524; SAC Dismissal Order at 4-5.  The Supreme Court made clear in *Inclusive Communities* that a further "command with respect to disparate-impact liability" is that only policies that are alleged (and later proven) to be "artificial, arbitrary, and unnecessary" can be the subject to a disparate impact recovery.  *Id*. at 2524.  The requirement is a common-sense one, cabining the FHA theory of unintentional discrimination into a limited scope of conduct that concerns behavior that on its face really has no good justification.

On this point, the TAC is amended to add only conclusory, threadbare recitals that Bank of America "created an 'artificial, arbitrary, and unnecessary' barrier to fair housing opportunities for minority [borrowers]."  TAC ¶¶ 1, 37, 90, 128.  The closest the TAC comes to pleading the required factual support for why any policy was "artificial, arbitrary and unnecessary" is the conclusory recital that "[t]here were less costly and thus less discriminatory alternatives available to BoA that would have achieved the same business goals as were achieved by these policies and practices."  *Id.* ¶ 3.  This is no more specific to describe why any particular policy is actionable than merely reciting the words "the policy was artificial, arbitrary and unnecessary," and so does not save the claim.

**4.   *Causation.***   Finally, the City's failure to allege any artificial, arbitrary, and unnecessary facially neutral policy naturally precludes it from satisfying the fourth element of the claim: the "causal connection" between such a policy and the claimed statistical disparity. *Inclusive Communities*, 135 S. Ct. at 2523.  At no point does the City even attempt to assert that one of the alleged practices it challenges in paragraph 37 (whether facially neutral or not) was a cause of any of the discrimination it challenges elsewhere in the complaint.

Moreover, particularly with respect to limitations, the City does not even allege the bare minimum for it to be *theoretically conceivable* that any of those policies was a cause of a post-December 13, 2011, loan going into default – *i.e.*, that such a practice was actually in effect post-December 13, 2011.  This is fatal.  "[I]f a plaintiff relies on [a] statistical disparity, the claim must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."  *City of L.A. v. Wells Fargo & Co.*, 2015 WL 4398858, at *6 (C.D. Cal. July 17, 2015) (quoting *Inclusive Communities*; internal quotation marks omitted).

Even if the City had alleged a facially neutral policy (and it has not), the TAC fails to allege which statistically significant disparities (if any) were *caused* by the facially neutral policy, as opposed to the intentional discrimination also alleged by the City.  For example, the City's shotgun pleading makes vague references to how "discriminatory lending practices" caused disproportionately high foreclosures among minority borrowers, but this conflates the alleged intentional discrimination with the alleged disparate impact discrimination.  *See e.g.*, TAC ¶ 77 ("Bank of America's discriminatory lending practices have caused and continue to cause foreclosures in Miami."); *see also id.* ¶¶ 10-11, 65, 74, 81.

Furthermore, as noted above, the TAC affirmatively attributes the claimed statistical disparity to *intentional* discrimination, and expressly disclaims that it is the result of neutral, "non-racial" underwriting criteria.  TAC ¶ 64.  For this reason, the contrived recital in paragraph 37 – that "facially neutral" practices caused the disparities – not only lacks any plausible factual support, but is expressly contradicted by the complaint's other allegations.  This is not a permissible use of the device of alternative pleading.  The City cannot simultaneously assert that the same alleged disparity was simultaneously caused by "intentional[] steering" (TAC ¶ 90) and also by neutral, "non-racial" factors (TAC ¶ 64).  "Pleading in the alternative is fine for legal theories, but it is not for facts – facts the party knows and has sworn to.  A party representing a single fact as both true and false does not create a fact issue; it engenders an ethical one."  *Alfred*

*v. Harris Cty. Hosp. Dist.*, No. 15-0569, 2016 U.S. Dist. LEXIS 1840, at *4 (S.D. Tex. Jan. 7, 2016), *appeal docketed*, No. 16-20058 (5th Cir. Jan. 22, 2016).

### IV.   The TAC Should Be Dismissed With Prejudice.

This matter has now been pending for three-and-a-half years.  The City has had its day in court, and has made four attempts to state a cognizable claim.  ECF Nos. 1 (complaint), 72-1 (proffered complaint), 84 (SAC), 102 (TAC).  But at every turn, the City has demonstrated not just that it cannot state a claim, but that it will *never* have a plausible claim.  This Court (and the Eleventh Circuit) can provide no clearer direction than what was already provided in the SAC Dismissal Order.  Even in the face of such unambiguous guidance, the City still did not come close to stating a claim in the TAC.  To allow any further amendment would be both futile and a waste of the Court's and the parties' time and resources.  The dismissal should be with prejudice, as this Court has concluded in similar, three-strikes-and-you're-out circumstances.  *See Sultan v. Safeco Surplus Lines Ins. Co.*, No. 10-60561, 2010 WL 9489974, at *13 (S.D. Fla. Dec. 17, 2010) (Dimitrouleas, J.) ("Having already had three opportunities to try and properly state their claims, the Court finds that any additional amendment would be futuile."), *aff'd sub nom.*, 444 F. App'x 376 (11th Cir. 2011); *Hasbun v. Recontrust Co.*, 2011 WL 3837158, at *3 (S.D. Fla. Aug. 24, 2011) (Dimitrouleas, J.) (dismissing second amended complaint with prejudice where allegations still indicated no claim and "further amendment would be futile"), *aff'd*, 508 F. App'x 941 (11th Cir. 2013).[10]

### REQUEST FOR HEARING

In accordance with S.D. Fla. L.R. 7.1(b)(2), Defendants request a hearing on this Motion because the complexity of the issues raised, the procedural history of this action, and the nature of the amendments are such that oral argument would be beneficial to the Court.  Defendants estimate that one hour will be sufficient to address the issues raised.

---

[10] *See also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (affirming denial of motion to file second amended complaint where "[t]his court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal") (internal quotations omitted); *Gibson v. Doe*, 629 F. App'x 868, 871 (11th Cir. 2015); *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1262 (11th Cir. 2011); *Mickens v. Tenth Judicial Circuit*, 181 F. App'x 865, 876 (11th Cir. 2006); *O'Boyle v. Bradshaw*, 952 F. Supp. 2d 1310, 1317 (S.D. Fla. 2013) (Dimitrouleas, J.); *Biton v. United States*, No. 10-80874, 2010 WL 4924000, at *1-2 (S.D. Fla. Sept. 23, 2010) (Dimitrouleas, J.).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the TAC be dismissed with prejudice.   Leave to amend is not warranted because the complaint has already been amended three times and still fails to state a claim.

Respectfully submitted,

/s/*Christopher S. Carver*

THOMAS M. HEFFERON, ESQ.
*thefferon@goodwinprocter.com*
JAMES W. MCGARRY, ESQ.
*jmcgarry@goodwinprocter.com*
MATHEW S. SHELDON, ESQ.
*msheldon@goodwinprocter.com*
(all admitted *Pro Hac Vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC 20001
Tel.: 202-346-4000
Fax: 202-346-4444

*Attorneys for Defendant BANK OF AMERICA, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB*

MICHAEL B. CHAVIES, ESQ.
Florida Bar No. 191254
*michael.chavies@akerman.com*
CHRISTOPHER S. CARVER, ESQ.
Florida Bar No. 987263
*christopher.carver@akerman.com*
WILLIAM P. HELLER, ESQ.
Florida Bar No. 993580
*william.heller@akerman.com*
MARISSA X. KALIMAN
Florida Bar No. 100532
*marissa.kaliman@akerman.com*
**AKERMAN SENTERFITT LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095

*Attorneys for Defendant BANK OF AMERICA, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB*

Date:   May 16, 2016

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of *Defendants' Motion to Dismiss Third Amended Complaint with Prejudice and Request for Hearing* were served on May 16, 2016, on all counsel or parties of record on the following Service List via CM/ECF.

*/s/ Christopher S. Carver*

SERVICE LIST

*City of Miami v. Bank of America, N.A.*
**CASE NO. 13-CV-24506-WPD**
<u>U.S. District Court, Southern District of Florida</u>

**Counsel for Plaintiff City of Miami**
(service by CM/ECF)

Lance A. Harke, Esq.
**HARKE CLASBY & BUSHMAN LLP**
9699 N.E. Second Avenue
Miami, FL 33138
Telephone: 305.536.8220
lharke@harkeclasby.com

Victoria Méndez, Esq.
**OFFICE OF THE CITY ATTORNEY**
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130
Telephone: 305.416.1800
vmendez@miami.gov

Erwin Chemerinsky, Esq.
**UNIVERSITY OF CALIFORNIA - IRVINE**
401 East Peltason Drive, Educ. 1095
Irvine, CA 92697
Telephone: 949.824.7722
echemerinsky@law.uci.edu

Joel Liberson, Esq.
Howard Liberson, Esq.
**TRIAL & APPELLATE RESOURCES, P.C.**
400 Continental Blvd., 6th Floor
El Segundo, CA 90245
Telephone: 310.426.2361
joel@taresources.com
howard@taresources.com

Robert S. Peck, Esq.
**CENTER FOR CONSTITUTIONAL LITIGATION**
777 - 6th Street NW, Suite 520
Washington, DC 20001
Telephone: 202.944.2803
Robert.peck@cclfirm.com

**Counsel for Defendants Bank of America, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB**
(service by CM/ECF)

Michael B. Chavies, Esq.
Christopher S. Carver, Esq.
William P. Heller, Esq.
Marissa X. Kaliman, Esq.
**AKERMAN LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
michael.chavies@akerman.com
christopher.carver@akerman.com
william.heller@akerman.com
marissa.kaliman@akerman.com

Thomas M. Hefferon, Esq.
James W. Mcgarry, Esq.
Mathew S. Sheldon, Esq.
(all admitted *Pro Hac Vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC 20001
Tel.: 202-346-4000
Fax: 202-346-4444
thefferon@goodwinprocter.com
jmcgarry@goodwinprocter.com
msheldon@goodwinprocter.com