**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 13-CV-24506-DIMITROULEAS**

CITY OF MIAMI, a Florida municipal
corporation,

        Plaintiff,

   v.

BANK OF AMERICA, N.A.; and
COUNTRYWIDE BANK, FSB,

        Defendants.

_____

## PLAINTIFF CITY OF MIAMI'S RESPONSE IN OPPOSITION TO BANK OF AMERICA'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

1307858.1

# TABLE OF CONTENTS

**Page**

I.     Introduction ................................................................................................ 1

II.    Legal Standard ........................................................................................... 2

III.   The City's Claim Is Timely. ...................................................................... 2

       A.    The City Has Remedied the Defects That This Court Identified......... 2

       B.    Application of the Continuing Violation Doctrine ............................. 3

       C.    The City's Allegations of Limitations Period Loans Are Sufficient. .. 5

       D.    The City Has Alleged a Cognizable Injury........................................ 8

             1.   *Havens* Applies to the City's Claims. .................................... 9

             2.   The "Municipal Cost Recovery Rule" Is Inapplicable. ......... 11

IV.    The City Sufficiently Alleges a Disparate Impact Claim. ........................... 11

       A.    *Inclusive Communities* Did Not Create a Heightened Pleading
             Requirement.................................................................................. 11

       B.    The City States A Claim For Disparate Impact Liability. ................. 14

V.     Conclusion ................................................................................................ 20

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*A Society Without A Name, For People Without A Home,*
*Millennium Future-Present v. Virginia,*
655 F.3d 342 (4th Cir. 2011) ..................................................................... 8

*Adinolfe v. United Techs. Corp.,*
768 F.3d 1161 (11th Cir. 2014) ................................................................. 6

*Allen v. Prince George's Cty., Md.,*
737 F. 2d 1299 (4th Cir. 1984) .................................................................. 7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................... 2

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 2, 13, 14

*Bloom v. Mayor Alvereze,*
498 Fed. Appx. 867 (11th Cir. 2012) ........................................................ 8

*Bonasera v. City of Norcross,*
342 Fed. Appx. 581 (11th Cir. 2009) ...................................................... 14

*Brown v. Ark. Dep't of Human Servs.,*
452 Fed. Appx. 690 (8th Cir. 2011) .......................................................... 8

*Canyon County v. Syngenta Seeds, Inc.,*
519 F.3d 969 (9th Cir. 2008) .................................................................. 11

*Carter v. W. Pub. Co.,*
225 F.3d 1258 (11th Cir. 2000) ................................................................ 8

*Cherosky v. Henderson,*
330 F.3d 1243 (9th Cir. 2003) ................................................................ 19

*Chin v. Port Auth. of New York & New Jersey,*
685 F.3d 135 (2d Cir. 2012) ............................................................... 7, 18

*City of Los Angeles v. JPMorgan Chase & Co.,*
2014 WL 6453808 (C.D. Cal. Nov. 14, 2014) .......................................... 6

*City of Los Angeles v. Wells Fargo & Co.,*
22 F. Supp. 3d 1047 (C.D. Cal. 2014) ...................................................... 5

*City of Miami v. Bank of Am. Corp. ("Dismissal Opinion"),*
2016 WL 1072488 (S.D. Fla. Mar. 17, 2016) ....................................... 2, 7

*City of Miami v. Bank of America Corp.,*
800 F.3d 1262 (11th Cir. 2015) ....................................................... passim

# TABLE OF AUTHORITIES
## (continued)

Page

*City of Miami v. Bank of America Corp.*,
   No. 13-24506, 2016 WL 1072488 (S.D. Fla. Mar. 17, 2014) ........................................... 12, 15

*Cnty of Cook v. HSBC*,
   136 F. Supp. 3d 952 (N.D. Ill. 2015) ...................................................................... 5, 14, 16

*Cnty. of Cook v. Bank of Am. Corp.*,
   2015 WL 1303313 (N.D. Ill. Mar. 19, 2015).................................................................. 5, 16

*Cobb County v. Bank of Am. Corp.*,
   No. 1:15-cv-04081, 2016 WL 2937467 (N.D. Ga. May 2, 2016) ........................................ 18

*Cohen v. City of New York*,
   574 Fed. Appx. 28 (2d Cir. 2014) ................................................................................. 8

*Dekalb Cty. v. HSBC N. Am. Holdings Inc.*,
   No. 1:12-CV-03640-ELR, 2015 WL 8699229 (N.D. Ga. Nov. 16, 2015) ........................... 5, 7

*Delaware State College v. Ricks*,
   449 U.S. 250 (1980)..................................................................................................... 8

*District of Columbia v. Air Florida, Inc.*,
   750 F.2d 1077 (1984)................................................................................................. 11

*Felter v. Kempthorne*,
   473 F.3d 1255 (D.C. Cir. 2007) .................................................................................. 8

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) (*en banc*) ...................................................................... 8

*Germain v. M&T Bank Corp.*,
   111 F. Supp. 3d 506 (S.D.N.Y. 2015) .......................................................................... 6

*Gilbert v. Daniels*,
   No. 14-14032, 624 Fed. Appx. 716 (11th Cir. Aug. 28, 2015)..................................... 2, 3

*Gladstone Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979)..................................................................................................... 12

*Hallmark Developers, Inc. v. Fulton County*,
   466 F.3d 1276 (11th Cir. 2006) .................................................................................. 14

*Hamilton v. Southland Christian Sch., Inc.*,
   680 F.3d 1316 (11th Cir. 2012) .................................................................................. 18

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)............................................................................................. passim

*Hipp v. Liberty Nat'l Life Ins. Co.*,
   252 F.3d 1208 (11th Cir. 2001) ................................................................................. 3, 4

1307858.1

**TABLE OF AUTHORITIES**
(continued)

Page

*Hunt v. Aimco Properties, L.P.*,
814 F.3d 1213 (11th Cir. 2016) ................................................................................. 12

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977) .................................................................................................. 19

*Jackson v. Okaloosa County*,
21 F.3d 1531 (11th Cir. 1994) .................................................................................. 14

*Koch v. Consolidated Edison Company of New York, Inc.*,
468 N.E.2d 1 (1984) .................................................................................................. 11

*Lincoln v. Magnum Land Servs., LLC.*,
560 Fed. Appx. 144 (3d Cir. 2014) ............................................................................. 8

*Loard v. Sorenson*,
561 Fed. Appx. 703 (10th Cir. 2014) .......................................................................... 8

*Mack v. Wortham & Son, L.P.*,
541 Fed. Appx. 348 (5th Cir. 2013) ............................................................................ 8

*Merritt v. Countrywide Fin. Corp.*,
2015 WL 5542992 (N.D. Cal. Sept 17, 2015) ............................................................ 6

*Northfield Ins. Co. v. City of Waukegan*,
701 F.3d 1124 (7th Cir. 2012) .................................................................................... 8

*Paraquad v. St. Louis Housing Authority*,
259 F.3d 956 (8th Cir. 2001) .................................................................................... 10

*Paschal v. Flagstar Bank, FSB*,
295 F.3d 565 (6th Cir. 2002) ...................................................................................... 8

*Penelas v. Arms Technology Inc.*,
No. 99-1941, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) ................................ 11

*Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*,
794 F.3d 200 (1st Cir. 2015) ...................................................................................... 8

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
8:07-cv-1952, 2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) .................................... 6

*Segar v. Smith*,
738 F.2d 1249 (D.C. Cir. 1984) ................................................................................ 19

*Simpson v. All Saints & Saint Luke's Episcopal Home for the Retired*,
2015 WL 7313871 (N.D. Ga. Nov. 20, 2015) ............................................................ 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Speaker v. United States Department of Health & Human Services,*
 *Centers for Disease Control & Prevention,*
 623 F.3d 1371 (11th Cir. 2010) ........................................................... 2

*Sunset Drive Corp. v. City of Redlands,*
 370 Fed. Appx. 811 (9th Cir. 2010) ..................................................... 8

*Swierkiewicz v. Sorema N.A.,*
 534 U.S. 506 (2002) ............................................................................ 13

*Tearpock-Martini v. Borough of Shickshinny,*
 756 F.3d 232 (3d Cir. 2014) ................................................................ 8

*Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.,*
 135 S. Ct. 2507 (2015) .................................................................. passim

*Trafficante v. Metropolitan Life Ins.,*
 409 U.S. 205 (1972) ............................................................................ 12

*Watts v. Fla. Int'l Univ.,*
 495 F.3d 1289 (11th Cir. 2007) ........................................................... 2

*Weiland v. Palm Beach Cty. Sheriff's Office,*
 792 F.3d 1313 (11th Cir. 2015) ......................................................... 17

**STATUTES**

42 U.S.C. § 3613(a)(1)(A) ........................................................................ 3

**REGULATIONS**

24 C.F.R. § 100.500(a) ........................................................................... 14

Plaintiff City of Miami ("Plaintiff" or "the City") respectfully files this response in opposition to Bank of America's Motion to Dismiss Third Amended Complaint (Dkt. No. 103) ("Br.").

## I.    Introduction

The City's Third Amended Complaint (Dkt. No. 102) ("TAC" or "Complaint") remedies pleading defects this Court identified in dismissing the City's prior complaint.  It provides details on discriminatory practices in issuing loans during the limitations period, and ties those loans to Defendants' "longstanding, unbroken policy and practice of both intentionally steering minority borrowers in Miami into 'discriminatory' mortgage loans (defined [in the Complaint] as loans that have higher costs and risk features than more favorable and less expensive loans issued to similarly situated white borrowers) and engaging in facially neutral business policies and practices that created an 'artificial, arbitrary, and unnecessary' barrier to fair housing opportunities for minority home purchasers and owners."  TAC ¶ 1. The Complaint sets forth in detail the policies and practices that resulted in a disparate impact on minority borrowers, and the devastating impact Defendants' practices have had on these borrowers and on the City of Miami. The Complaint draws on publicly available information, loan data from Defendants, including residence-level information on specific loans, and information from confidential witnesses.

The City's Complaint satisfies the standard set forth by the Eleventh Circuit in *City of Miami v. Bank of America Corp.*, 800 F.3d 1262 (11th Cir. 2015), as well as this Court's instruction in its last order.  Even though discovery has not commenced, the City has tied specific allegations of discriminatory practices in issuing loans during the limitations period to extraordinarily detailed allegations of Defendants' longstanding discriminatory practices, supported by statistical analysis, information from confidential witnesses, and other publicly available information.

Defendants continue to argue that the City's claim is time-barred because of a lack of information about the limitations period loans, but misinterpret *City of Miami* to require more specificity and detail than required by that opinion or other controlling authority.  They also argue, in the face of well-established contrary authority, that the City must show injury during the limitations period from loans issued within that period, and misinterpret the Supreme Court's disparate impact jurisprudence.  Defendants' motion should be denied, so the parties can proceed to test the merits of the City's claims.

## II.     Legal Standard

On a motion to dismiss, the Court must accept the City's allegations as true and construe them in the light most favorable to the City.  *See Speaker v. U.S. Dep't of Health & Human Servs., Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  The plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (holding that the Supreme Court "has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (quoting *Twombly*, 550 U.S. at 556).  A complaint must merely provide the defendant with fair notice of the claim and grounds for relief and does not require detailed factual allegations.  *See Gilbert v. Daniels*, No. 14-14032, 624 Fed. Appx. 716, at *1 (11th Cir. Aug. 28, 2015) (citing *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678).

## III.    The City's Claim Is Timely.

### A.     The City Has Remedied the Defects That This Court Identified.

In *City of Miami*, the Eleventh Circuit held that this case may proceed if the City alleges the issuance of a loan reflecting the same discriminatory practice during the two-year limitations period as the loans issued in the pre-limitation period.  *City of Miami*, 800 F.3d at 1285.  After remand, in evaluating the City's Second Amended Complaint, the Court dismissed the City s claims because the allegations about limitation-period loans were "too conclusory to meet the *Twombly/Iqbal* pleading standard."  *City of Miami v. Bank of Am. Corp. ("Dismissal Opinion")*, 2016 WL 1072488, at *3 (S.D. Fla. Mar. 17, 2016).  This Court found that the Second Amended Complaint lacked specific information as to (a) the borrower(s)'s minority status, (b) the type of loan, (c) the characteristics that made it predatory or discriminatory, (d) when the loan closed, or (d) what basis Miami has to claim the loan will default or enter foreclosure.  *Id.*  The Court held that Miami had failed to allege that it suffered any injury from the four loans identified as issued pursuant to Defendants' discriminatory practices.  The City's Complaint remedies these pleading defects.

- 2 -

The City's Complaint adds specific allegations concerning the four limitations period loans. It also sets forth the borrowers' race, the type of loan, and the date the loan closed. TAC ¶ 124 nn.39-42. Further, the Complaint makes clear that the loans "violate the FHA and are discriminatory because they were issued to minority borrowers and were more expensive than the loans issued to similarly situated white borrowers during the limitations period based upon the regression analysis described earlier." *Id.* ¶ 124. In addition, based on a review of publicly available information on loans issued during the limitations period, the Complaint alleges that such data "strongly supports the conclusion that a greater number of more expensive and/or riskier loans were issued to minority borrowers than non-minority borrowers" during the limitations period." *Id.* ¶ 125.[1]

Despite Defendants' demand for an ever-increasing level of specificity about the limitations period loans, these allegations (in concert with the other meticulous and detailed allegations in the Complaint) more than provide Defendants with fair notice of the claim and grounds for relief. *See Gilbert*, 624 Fed. Appx. 716, at *1 (citations omitted).

### B.     Application of the Continuing Violation Doctrine

The FHA provides that a civil enforcement action must be filed "not later than 2 years after the occurrence *or the termination* of an alleged discriminatory housing *practice*." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). This provision provides that a continuing violation claim is timely so long as one instance of the same discriminatory practice occurs during the two-year limitations period, demonstrating that the continuing violation did not terminate prior to the limitations period. *See City of Miami*, 800 F.3d at 1284 (continuing violation doctrine "applies to 'the continued enforcement of a discriminatory policy'") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001)). Where a city "alleges that the Bank has engaged in a longstanding practice of discriminatory lending in which it extends loans to minority borrowers only on more unfavorable terms than those offered to white borrowers … [t]he various instances of discriminatory lending comprise the practice, which continues into the limitations period." *Id.* at 1285. This holds regardless of whether "the predatory qualities of the loans [took] slightly different forms over time" if "the essential discriminatory practice has

---

[1] However, the small size of the sample does not lend itself adequately to statistical analysis in isolation if the data is limited to the limitations period. *Id.* Nevertheless, the Complaint sets forth ample allegations and information that make the City's claims plausible and well-pled under binding Supreme Court authority.

remained the same." *Id.* The Eleventh Circuit explained that "a 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination." *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982)).

Pursuant to the continuing violation doctrine, a plaintiff may "sue on otherwise time-barred claims *as long as one act of discrimination has occurred . . . during the statutory period.*" *City of Miami*, 800 F.3d at 1284 (emphasis added). In *Havens*, the Supreme Court recognized that "where a plaintiff, pursuant to the [FHA], challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period] of the last asserted occurrence of that practice." *Havens*, 455 U.S. at 380-81. In *Havens*, only one instance of discrimination took place during the limitations period, but the continuing violation doctrine applied to make previous incidents under the policy actionable. *Id.*

Relying on *Havens* and assessing similar allegations of ongoing and continuing policies and practices, the Eleventh Circuit held that the "continuing violation doctrine" applies to FHA claims like those alleged here. *See City of Miami*, 800 F.3d at 1285. The City "has alleged not just one incident but an unlawful practice that continues into the limitations period." *Id.* Under this doctrine, the City may pursue an otherwise time-barred claim as long as it alleges that one act of discrimination has occurred during the statutory period. *Id.*

The City alleges a continuing violation that includes allegations of four loans that closed during the limitations period, demonstrating that the practice continued into the limitations period. However, these loans should not be viewed in isolation, but instead in connection with the allegations of the rest of the Complaint. Indeed, the City's Complaint focuses on a "longstanding, unbroken policy and practice of steering minority borrowers in Miami into mortgage loans" on less favorable terms than those for which the borrower was eligible and that are regularly issued to similarly situated white borrowers, TAC ¶ 1, and alleges that the "unlawful pattern and practice continues through the present and has not terminated." *Id.* ¶ 6. The Complaint offers voluminous detail, based on a regression analysis of Bank of America loans that controls for race and risk characteristics such as credit history, as well as government reports and other information, about the disproportionate incidences of foreclosures of Defendants' loan originations, especially in African-American and Hispanic neighborhoods in Miami. TAC ¶¶ 37-73. The Complaint also alleges that Defendants' loans to minority

borrowers enter into foreclosure faster than those issued to similarly situated white borrowers. *See* TAC ¶¶ 74-77.[2]

Combined with the specific allegations concerning the four limitations-period loans, the Complaint pleads sufficient facts from which a reasonable inference of discrimination may be drawn for the limitations-period loans. Collectively, these allegations suffice to satisfy the requirements of a continuing violation, which require the allegation of an occurrence of the alleged discriminatory practice during the limitations period. *City of Miami*, 800 F.3d at 1285.

C.     **The City's Allegations of Limitations Period Loans Are Sufficient.**

Defendants make a laundry list of complaints about the City's allegations of limitations period loans, none of which is persuasive.

First, they argue that the four limitations period loans that Plaintiffs identified as issued pursuant to a discriminatory practice are not of a particular "type." Br. at 7. That argument mischaracterizes the theory of liability set forth in the Complaint, which is based not on the issuance of particular types of loans, but on the issuance of loans with less favorable terms to minority borrowers than to similarly situated white borrowers. *See, e.g.,* TAC ¶¶ 1; 128.

The City's theory of liability is fully consistent with the Eleventh Circuit's holding that focuses on the continuing pattern and practice of "predatory lending targeted to minorities in Miami," and not the particular characteristics of the loans themselves. As the Court explained, it is not the *type* of loan that makes it "predatory," but rather Defendants' *practice* of providing more expensive, more risky loans to minority borrowers than to non-minorities that is

_____

[2] Multiple district courts have rejected statute of limitations arguments on motion to dismiss in which the plaintiff alleged an unterminated practice or continuing violation of the FHA. *See Cnty. of Cook v. Bank of Am. Corp.*, 2015 WL 1303313, at *5 ("The County alleges that Defendants *continue* to charge minority borrowers discriminatory fees and costs during the servicing of home loans."); *Cnty. of Cook v. HSBC*, 136 F. Supp. 3d at 965 ("Here, the County has alleged that Defendants are still engaged in their discriminatory mortgage lending practices and continue to service the loans in a discriminatory manner."); *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1059 (C.D. Cal. 2014) ("The exact type of loan issued to minority borrowers may have changed, but the City alleges the loans issued to minorities continued to be more high-risk than loans issued to white borrowers."); *Dekalb Cnty., Ga. v. HSBC N. Am. Holdings, Inc.*, No. 1:12-cv-003640-ELR, 2015 WL 1608094, at *2 (N.D. Ga. Mar. 3, 2015) ("Plaintiffs have properly pled an ongoing pattern of discriminatory housing practices which was alleged to have been continuing at the time of the filing of the Complaint."); *City of Oakland v. Wells Fargo & Co., Inc., et al.*, 3:15-cv-04321 (N.D. Cal.), Dkt. No. 38 (Apr. 18, 2016) (denying motion to dismiss and holding that plaintiff had sufficiently alleged continuing violation to satisfy the statute of limitations).

discriminatory in violation of the FHA.  *See City of Miami*, 800 F.3d at 1285 (citing, *inter alia, City of Los Angeles v. JPMorgan Chase & Co.*, 2014 WL 6453808, at *7 (C.D. Cal. Nov. 14, 2014) ("The City's allegations of discrimination under the FHA relate to Chase's lending practices overall, not a specific type of loan issued.").

Second, although Defendants concede that the City has offered new details on each limitations period loan, they purport to need more information about what makes the loans discriminatory, focusing only on the paragraph that includes those loans, and ignoring the rest of the Complaint, which details the years of discriminatory practice to which those loans are linked. Br. at 8.[3]  Defendants' attempt to erase the detailed supporting allegations and context for the limitations period loans is contrary to the well-established rule that a complaint's allegations are not to be "parsed and read in isolation, but must be read as a whole."  *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 8:07-cv-1952, 2009 WL 3853592, at *2 (M.D. Fla. Mar. 30, 2009) (quotation and citation omitted).  *See also, e.g., Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) (reversing dismissal of case in which an allegation "may appear conclusory when read in isolation," but is plausible in light of complaint's previous additional factual allegations).[4]

Defendants then criticize the regression analysis, which provides detailed evidence of Defendants' discriminatory lending practices, as insufficient support for the existence of

---

[3] Defendants offer a series of detailed questions that they contend the City must answer for each loan, but the authority that Defendants provide (Br. at 9 n.5) does not support the heightened pleading requirement for FHA cases that Defendants urge.  Defendants cite a portion of *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 533 (S.D.N.Y. 2015), that deals not with the FHA, but with the distinct elements of the Equal Credit Opportunity Act.  *Simpson v. All Saints & Saint Luke's Episcopal Home for the Retired*, 2015 WL 7313871, at *3 (N.D. Ga. Nov. 20, 2015), similarly did not involve the FHA; instead, the *pro se* plaintiff was unable to articulate the basis of his discrimination claim at all.  In *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *17 (N.D. Cal. Sept 17, 2015), another *pro se* case, the plaintiffs did not allege, as the City does here as to the limitations loans, that they would have been qualified for the loans they were denied.

[4] Similarly, Defendants assert that the allegation of specific instances of loans issued pursuant to discriminatory practices during the limitations period does not suffice to show intentional discrimination.  *See* Br. at 12.  This assertion is based, again, on an attempt to treat allegations in isolation, rather than as part of the Complaint's overall allegations.  It ignores the Complaint's allegations of intentional discrimination in the Complaint, including from *within the limitations period, see* ¶¶ 42; 44, 57, and ignores the applicability of the continuing violations doctrine, which ties the loans from the limitations period to the Complaint's detailed allegations of Defendants' pervasive and continuing discriminatory conduct.

1307858.1

limitations period violations because the regression analysis covers 2004-2012 (a period that extends into the limitations period). Br. at 9. This criticism fails, too, for at least three reasons. First, it wishes away the Eleventh Circuit's holding that this case involves a continuing violation. That the data set, which is pre-discovery, does not continue through the end of the statutory period does not make Plaintiff's claim implausible. Second, the regression analysis is sufficient to create an inference of continuing discrimination; the City need only plausibly plead discrimination, not prove it, and any inference must be drawn in favor of the City. Finally, it is well-established that statistical evidence that includes data from outside the statute of limitations is relevant to help prove discrimination, just as the regression analysis here shows Defendants' continuing discriminatory lending and foreclosure patterns. *See, e.g., Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 152 (2d Cir. 2012).

Defendants argue that the City must identify similarly situated white borrowers "who took out loans around the same time." Br. at 12. The Court should reject Defendants' attempt to litigate the merits of the City's claim on the pleadings. The only authority that Defendants offer for their premature demand of evidentiary proof is *Allen v. Prince George's Cty.*, 737 F. 2d 1299, 1304 (4th Cir. 1984), a 32-year-old out-of-circuit case that did not involve the FHA and that was decided after full discovery and a bench trial, illustrating why this question is not an appropriate one for a motion to dismiss. *See also, e.g., Dekalb Cty. v. HSBC N. Am. Holdings Inc.*, No. 1:12-CV-03640-ELR, 2015 WL 8699229, at *2 (N.D. Ga. Nov. 16, 2015) (court ordered merits discovery on specific instances of discrimination continuing into the limitations period).

Finally, Defendants argue that the City must allege when the limitations period loans went into foreclosure. Br. at 11. First, as Defendants acknowledge (Br. at 9), in its Dismissal Opinion, this Court held that the City must allege its basis to claim that a loan "will default or enter into foreclosure," not that a loan entered into foreclosure. *Dismissal Opinion* at *3. The Court's direction was consistent with the holdings of the Supreme Court and the Eleventh Circuit, which have both held that in a continuing violations case, courts are to look at when the last act of the discriminatory practice occurred, not when the consequences of the practice, such as a loan going into foreclosure, manifest themselves.[5] *See Carter v. W. Pub. Co.*, 225 F.3d

---

[5] Every single federal appellate court in the country has reached the same conclusion. *See Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 207 n.3 (1st Cir.

*Footnote continued on next page*

1307858.1

1258, 1263 (11th Cir. 2000) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)); *City of Miami*, 800 F.3d at 1284 (per *Havens*, trigger for commencement of the limitations period is the "last asserted occurrence of that practice").

The Eleventh Circuit did not hold, in *City of Miami*, that a plaintiff must allege that a loan issued within the limitations period also went into foreclosure during that same period. Instead, it repeatedly referred to the requirement that the plaintiff allege instances of the discriminatory *practice* in the limitations period. *See City of Miami*, 800 F.3d at 1285-86 (holding that the City of Miami "has alleged not just one incident… but an unlawful practice that continues into the limitations period," that "the essential discriminatory practice has remained the same: predatory lending targeted at minorities in the City of Miami," and that the "various instances of discriminatory lending comprise the practice, which continues into the limitations period"). Further, in its extensive discussion of standing, the Eleventh Circuit nowhere imposed, let alone suggested, that the City's case could not proceed unless it was able to establish that a limitations period loan entered foreclosure during the limitations period. *Id*. at 1272-73.

Pursuant to this Court's holding, and consistent with *City of Miami*, the City detailed the history of foreclosures in similar properties, TAC ¶¶ 74-89, and sufficiently alleged the basis for the likelihood that the limitations period loans will follow the trends detailed throughout the Complaint and enter into foreclosure. *See id.* ¶ 124.

## D.   The City Has Alleged a Cognizable Injury.

Defendants do not argue that the City has not shown Article III injury during the two-year limitations period. Indeed, the City has alleged injury during the limitations period,

---

*Footnote continued from previous page*
2015); *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 237 (3d Cir. 2014); *Loard v. Sorenson*, 561 Fed. Appx. 703, 706-07 (10th Cir. 2014); *Lincoln v. Magnum Land Servs., LLC.*, 560 Fed. Appx. 144, 150-52 (3d Cir. 2014); *Cohen v. City of New York*, 574 Fed. Appx. 28, 28-29 (2d Cir. 2014); *Mack v. Wortham & Son, L.P.*, 541 Fed. Appx. 348, 355-56 (5th Cir. 2013) (per curiam); *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012); *Bloom v. Mayor Alvereze*, 498 Fed. Appx. 867, 883-84 (11th Cir. 2012); *A Society Without A Name, For People Without A Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 348-49 (4th Cir. 2011); *Brown v. Ark. Dep't of Human Servs.*, 452 Fed. Appx. 690, 692 (8th Cir. 2011); *Sunset Drive Corp. v. City of Redlands*, 370 Fed. Appx. 811, 812 (9th Cir. 2010); *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (*en banc*); *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007); *Paschal v. Flagstar Bank, FSB*, 295 F.3d 565, 573 (6th Cir. 2002). Three of these cases – *Sunset Drive Corp.*, *Garcia*, and *Paschal* – specifically involve claims brought pursuant to the FHA.

- 8 -

including for example, suppressed property values from the blight caused by the continuing violation, resulting in lost tax revenues and remediation costs. Those are injuries that are concrete and particularized.

Instead, Defendants argue that the City must show a sequence of events, all stemming from limitations period activity, and leading to injury during the limitations period. Br. at 12. This argument conflicts with the Supreme Court's controlling *Havens* decision, and should be rejected. Defendants' contention that the City must be "aggrieved" by a limitations period loan is incorrect. The City is aggrieved by the continuing violation predicated on a pattern of discriminatory practices that continued into the limitations period. Its injury is not a function of a specific discriminatory act during the limitations period, by a continuing practice of discrimination that creates its injury.

### 1. *Havens* Applies to the City's Claims.

In *Havens*, three individual plaintiffs and one organization (Housing Opportunities Made Equal ("HOME")) brought suit over allegations that a landlord falsely represented the availability of housing to minority borrowers to "steer" them away from living in the landlord's property.[6] *See* 455 U.S. at 368-69. The plaintiffs alleged five different specific instances of allegedly discriminatory acts in violation of the FHA, but four of the instances were outside of the limitations period and the fifth instance was within the limitations period but only involved one of the minority plaintiffs. *Id.* at 380. The Court held that because the fifth instance was during the limitations period, none of the claims were barred. *Id.* The Court found that the organization plaintiff, HOME, had adequately alleged injury because it "claims injury not only from the [discrete alleged pre-limitations incidents], but also from a continuing policy and practice of unlawful racial steering that extends through the last alleged incident." *Id.* at 381. HOME claimed that it was "frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services" and "had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices." *Id.* at 379. Importantly, HOME did not claim that, and the Court did not analyze whether, the fifth instance of discriminatory conduct injured HOME in this way. *See id.*

---

[6] Two minority applicants and one white applicant comprise the three individual plaintiffs. The minority applicants' claims involved discriminatory misrepresentations about the availability of housing.

Rather, the Court appropriately examined whether HOME had adequately alleged that it was injured by the continuing violation, concluded HOME had, and ended the inquiry. *Id.*

The *Havens* Court's reasoning is instructive. The Court analyzed the claimed injuries to determine whether the injuries stemmed from the challenged discriminatory practice, **but not** the specific instance of discrimination, *see id.* at 381, as should this Court. The City has detailed economic and noneconomic injuries it sustained both before and during the limitations period stemming from Defendants' continuing violation. *See* TAC ¶¶ 90-122. The City also alleged discrete instances of discriminatory conduct during the limitations period which demonstrate that the continuing violation did not stop prior to the limitations period. *See* TAC ¶¶ 124-25. To allege a cognizable injury under the FHA, the City need do no more.[7]

In arguing that injury must be "imminent" or "certainly impending," Defendants rely on this Court's Dismissal Opinion, which in turn cited to the Eighth Circuit's decision in *Paraquad v. St. Louis Housing Authority*, 259 F.3d 956, 959 (8th Cir. 2001). The City respectfully submits that *Paraquad* is inapposite. *Paraquad* involved a discrete and speculative claim, not a continuing violation that involved prior injury. There, the plaintiffs challenged a plan that had not yet been implemented and still required approval by the Department of Housing and Urban Development. Thus, it was not ripe and persons (if any) who might be injured were unknown. *Paraquad*, 259 F.3d at 959. Here, the City has alleged past injuries continue into the present, alleging that over the course of a decade, Defendants engaged in a discriminatory practice of issuing loans on different terms to minority borrowers which caused injury in the form of suppressed property tax revenues, increased remediation and other costs, and impairment of the City's goals to assure that racial factors do not adversely affect the ability of any person to choose where to live in the City, among others. TAC ¶¶ 90-122. As the past discriminatory practices of the same kind resulted in injury to the City, it is expected that the same unlawful acts today will cause the same types of injuries to the City.[8]

---

[7] Similarly, the Eleventh Circuit held that the City must only plead that the "specific practices continued into the statutory period." *City of Miami*, 800 F.3d at 1283. The City has done that.

[8] Moreover, *Paraquad* was not an FHA case. Rather, it focused upon whether the District Court erred in granting summary judgment in favor of defendants on the basis that plaintiff's claim, seeking declaratory and injunctive relief, had not yet ripened. The prerequisites to obtaining declaratory and injunctive relief have no bearing upon the Article III standing analysis in this case, nor do they require a demonstration of standing during the discrete limitations period.

### 2.    The "Municipal Cost Recovery Rule" Is Inapplicable.

Defendants also argue that the City's claim of injury in the form of the cost of "provid[ing] costly municipal services for foreclosure properties in minority neighborhoods" is not capable of sustaining the lawsuit, relying on the "municipal cost recovery rule." *See* Br. at 13 (citing *Penelas v. Arms Technology Inc.*, No. 99-1941, 1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999)). Defendants seek to apply that rule, which prohibits the recovery of municipal costs in common law negligence cases,[9] to this FHA case, citing to *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir. 2008), a case brought under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Br. at 14. But *Canyon County* explains exactly why the "municipal cost recovery rule" is inapplicable here:

> [T]he rationale underlying the [common law] 'municipal cost recovery rule' is twofold: (1) that there is little reason for courts to use tort law to unsettle expectations and disrupt the existing, tax-payer funded systems of providing public safety services; and (2) that it is not the courts' role to disturb the legislature's decision to fund such services as a part of its overall fiscal policy choices…. In this instance, we are not dealing with state common law, but with a statutory cause of action created by Congress. Therefore, we are not concerned that our court might upset the local legislative body's fiscal policy by allowing recovery for public safety services. Instead, **the question is one of Congress' intent.**

*Id.* at 979-80 (internal citation and footnote omitted) (emphasis added). As *Canyon County* held, injury under RICO is limited to "business or property." *Id.* at 980. By contrast, this action is brought under the FHA, a remedial federal statute, for which the Supreme Court (and Eleventh Circuit) has recognized Congress' "***broad remedial intent.***" *See City of Miami*, 800 F.3d at 1285 (quoting *Havens*, 455 U.S. at 380) (emphasis added). The "municipal cost recovery rule" is inapplicable in FHA cases.

## IV.    The City Sufficiently Alleges a Disparate Impact Claim.

### A.    *Inclusive Communities* Did Not Create a Heightened Pleading Requirement.

The Supreme Court issued a landmark civil rights ruling in *Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2525 (2015), which represents the continuation of the Court's unbroken pronouncements that it is a bedrock principle

---

[9] The two cases cited by the *Penelas* court, *Koch v. Consolidated Edison Company of New York, Inc.*, 468 N.E.2d 1 (1984) and *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (1984) were also brought under negligence theories.

of law that the FHA is to be interpreted according to the broad remedial intent of Congress embodied in the Act. *Id. See also Havens*, 455 U.S. at 380; *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91 (1979); *Trafficante v. Metropolitan Life Ins.*, 409 U.S. 205, 209 (1972) ("The language of the [FHA] is broad and inclusive."). In fact, the Eleventh Circuit recently noted that, given the FHA's remedial purpose, "the Supreme Court has repeatedly instructed us to give the Fair Housing Act a 'broad and inclusive' interpretation." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016). In holding that disparate impact claims can be brought under the FHA, the Supreme Court recognized that the Act's "central purpose" is "to eradicate discriminatory practices within a sector of the Nation's economy." *Inclusive Communities*, 135 S. Ct. at 2511.

In its prior ruling in this case, the Eleventh Circuit flagged *Inclusive Communities* for the parties and the Court to consider how it may impact resolution of this case. *See City of Miami*, 800 F.3d at 1287. The Eleventh Circuit did not set out a new or heightened pleading standard.

This Court subsequently dismissed the City's SAC, and set a new pleading standard for FHA disparate impact claims as follows:

> *Inclusive Communities* requires that an FHA disparate impact complaint (1) show statistically-imbalanced lending patterns which adversely impact a minority group; (2) identify a facially-neutral policy used by Defendants; (3) allege that such policy was "artificial, arbitrary, and unnecessary;" and (4) provide factual allegations that meet the "robust causality requirement" linking the challenged neutral policy to a specific adverse racial or ethnic disparity.

*City of Miami v. Bank of America Corp.*, No. 13-24506, 2016 WL 1072488, at *4-5 (S.D. Fla. Mar. 17, 2014). This Court found that while the SAC met the first of these pleading requirements, the SAC failed to meet the second, third and fourth requirements, and granted Miami leave to amend. *Id.* As discussed below, the City's TAC more than meets these requirements as pleaded, such that Defendant's motion to dismiss should be denied. In addition, however, the City also respectfully requests that this Court reconsider its prior ruling regarding the appropriate pleading standard for FHA disparate impact claims, and submits that *Inclusive Communities* did not create a heightened pleading requirement for its disparate impact claims.

Specifically, *Inclusive Communities* did not modify the Supreme Court's earlier ruling that it had "never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* [which established the burden-shifting framework for disparate-impact cases] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion

to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). In fact, the unanimous *Swierkiewicz* decision criticized the Second Circuit for imposing a heightened requirement of pleading a prima facie case in discrimination actions, because it would "too narrowly constric[t] the role of the pleadings" and "conflict[] with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 512. The Court added:

> Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.

*Id*.

The Supreme Court affirmed *Swierkiewicz*'s plainly stated rejection of a heightened pleading requirement in 2007 in *Twombly*. *See* 550 U.S. at 569-70 ("*Swierkiewicz* did not change the law of pleading, but simply re-emphasized ... that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements."). The pleading standard in *Twombly* and *Swierkiewicz* was not overturned by *Inclusive Communities*.

Justice Kennedy's caution, in dicta, that courts should avoid "abusive disparate-impact claims," is simply not applicable in this case. This lawsuit does not concern a "one-time decision" which "may not be a policy at all." 135 S. Ct. at 2522-24. It does not concern a state actor or private developer attempting to further a "valid interest" in "revitalizing dilapidated housing." This lawsuit concerns the longstanding and continuing irresponsible lending practices of a bank that has been the target of lawsuits, investigations and charges brought by the U.S. Department of Justice, the Federal Reserve Systems Examiners, the Federal Reserve Board, the Office of Thrift Supervision, and the Federal Trade Commission, specifically for the devastating impact its policies and practices have had on minority homeowners. *See* TAC ¶¶ 16-17; 30-34. The Complaint properly alleges that the artificial barriers created by Defendants had a disparate impact on minority borrowers, resulting in a disproportionate number of foreclosures on minority-owned properties, and a disproportionate number of exploitative loans in minority neighborhoods. The widespread abuse that has been alleged is not the type of isolated or beneficial action that concerned Justice Kennedy in *Inclusive Communities*.

The only two pleading requirements for a FHA disparate impact claim even after *Inclusive Communities* are a showing of statistical disparities, and allegations that facially-neutral policies of the defendant explain these disparities. *Inclusive Communities*, 135 S. Ct. at 2523. For example, in *Cnty of Cook v. HSBC*, 136 F. Supp. 3d 952 (N.D. Ill. 2015), a post-*Inclusive Communities* decision, the district court held that the complaint stated a claim for disparate impact under the FHA by alleging, among other things, that the pricing policies lender designed increased the costs for loans made to minority borrowers within the county, thereby reducing their home equity, and caused a downward spiral of mortgage delinquencies and failures amongst minority borrowers. 136 F. Supp. 3d at 967. In so ruling, the district court held that "to state a disparate impact claim under the FHA requires allegations that Defendants' actions, despite being unintentional, had a "discriminatory effect" upon a protected class." *Id.* at 966.

The City respectfully requests that the Court not carve out FHA disparate impact claims and impose a stricter standard at the pleading stage than Rule 12(b)(6), the Supreme Court, or the Eleventh Circuit impose. *See Twombly*, 550 U.S. at 570 (holding that a complaint contain "only enough facts to state a claim to relief that is plausible on its face").

B.      **The City States A Claim For Disparate Impact Liability.**

The City has satisfied the requirements for a disparate impact pleading: statistical disparities and allegations that certain policies of the defendant explain the disparities. *Inclusive Communities*, 135 S. Ct. at 2523; *see also* TAC ¶¶ 9-15, 19, 37, 46-73, 124-25, 128. As described above, a plaintiff can establish a violation under FHA by showing a significant discriminatory effect or disparate impact on a protected group. *See Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1543 (11th Cir. 1994); *see also Hallmark Developers, Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006); *Bonasera v. City of Norcross*, 342 Fed. Appx. 581, 585 (11th Cir. 2009). According to the federal agency charged with responsibility for enforcing the FHA, a "practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons." 24 C.F.R. § 100.500(a).[10] *See also Cnty. of Cook v. HSBC*, 136 F. Supp.

---

[10] The City's TAC further alleges that Defendants knew, or should have known of the adverse consequences of its lending misconduct to borrowers for a number of reasons, including the Defendants' sophisticated risk analysis policies and procedures articulated in its 2014 Annual Report, the existence of offices within the City, the use of detailed underwriting technology, analytic tools, data, and reports. TAC ¶ 12 n.8

at 966 ("to state a disparate impact claim under the FHA requires allegations that Defendants' actions, despite being unintentional, had a "discriminatory effect" upon a protected class").

Even evaluated under this Court's four-part pleading standard, the City's TAC states a claim for disparate impact liability. *First*, as the Court previously found, the City has shown statistically-imbalanced lending patterns which adversely impact a minority group. *City of Miami*, 2016 WL 1072488, at *4. The TAC is no different. The TAC provides an extensive data analysis that is more than sufficient to satisfy the requirements for pleading disparate impact discrimination. For example, a regression analysis that takes into account borrower race and numerous objective risk characteristics and controls for credit history establishes that African-American borrowers were 1.581 times more likely to receive a higher cost loan than a white borrower possessing similar characteristics, and a Latino borrower was 2.087 times more likely as a white borrower to receive such a loan. TAC ¶ 15. For borrowers with FICO scores exceeding 660, the Complaint alleges that an African-American borrower was 1.533 times more likely to receive a higher cost loan than a white borrower with similar underwriting and borrower characteristics, and a Latino borrower was 2.137 times more likely to receive such a loan than a white borrower with similar underwriting and borrower characteristics. *Id*; *see also* ¶¶ 60-61. A similar regression analysis found that borrowers in heavily minority neighborhoods in Miami were 1.585 times more likely to receive a high-cost loan than a borrower with similar characteristics in a non-minority neighborhood. *Id.* ¶ 62. Data reported by the Bank and available through public databases shows that in 2004-2012, 21.9% of loans made by Bank of America to African-American and Latino customers in Miami were high-cost, but only 8.9% of loans made to white customers in Miami were high-cost. *Id.* ¶ 63. This data is further supported corroborated by additional nationwide studies and reports. *Id.* ¶¶ 67-73. The City has more than satisfied its burden.

*Second*, the City has met any substantive requirement that it identify facially neutral policies used by Defendants by alleging that Defendants created financial incentives for employees that resulted in the disparities complained-of; that they placed borrowers in more expensive, riskier loans than they qualified for; that they failed to properly underwrite loans; that they permitted mortgage brokers to charge "yield spread premiums" for qualifying a borrower for an interest rate that is higher than the rate the borrower qualifies for and can actually afford; that they required substantial prepayment penalties that prevent borrowers whose credit has

- 15 -

improved from refinancing their discriminatory loan to a prime loan; that they charged excessive points and fees that are not associated with any increased benefits for the borrower; and  that they failed to properly monitor numerous aspects of its mortgage business, among other policies. *See* TAC ¶¶ 37, 128.  Other courts evaluating similar policies have found that similar allegations are sufficient to identify facially neutral policies.

Defendants' assertion that the City has failed to allege facially-neutral policies simply ignores the bulk of these allegations.  *See* Br. at 14-15.  The City alleges a detailed list of lending practices occurring during the pertinent time period, including financial incentives to loan officers, that are "united because they represent manifestations of the same continuous and unbroken practice of steering minority borrowers into disadvantageous loans."  TAC ¶ 37.  These practices are not limited to intentional misconduct, and courts in similar cases have recognized them as cognizable policies for purposes of alleging a disparate impact claim, rejecting similar arguments by defendant banks.  *See Cnty. of Cook v. HSBC*, 136 F. Supp. 3d at 966-67 (holding, post-*Inclusive Communities,* discretionary mortgage lending policies sufficient to support claim of disparate-impact discrimination); *Cnty. of Cook v. Bank of Am. Corp.*, 2015 WL 1303313, at *7-8 (N.D. Ill. Mar. 19, 2015) (complaint alleging that Defendants' discretionary pricing policies, credit approval decisions, and appraisal practices resulted in minority borrowers receiving a disproportionate share of high cost home loans was sufficient to establish prima facie claim of disparate impact discrimination at the motion to dismiss stage).  The Complaint here similarly alleges that the Defendants had policies or practices that had an adverse disparate impact on minority borrowers during the entire period in issue.

*Third*, the TAC alleges that the policies described above constituted "artificial, arbitrary, and unnecessary" barriers to fair housing opportunities for minority home purchasers and owners.  *See* TAC ¶¶ 1, 3, 13, 132.  The essence of the City's claim is that Defendants' business policies and practices of promoting loans that have higher costs and risk features were done for Defendants' financial gain, and the burdens of such actions fell disproportionately on minority communities in Miami.  *See, e.g.,* TAC ¶¶ 19 ("The discriminatory lending practices at issue herein have resulted in what many leading commentators describe as the 'greatest loss of wealth for people of color in modern US history.'"); 78-80 (describing how Defendants' loans to minorities result in especially quick foreclosures in Miami).  The entire gist of the City's claims is that these practices were artificial, arbitrary, and unnecessary.  To the extent Defendants intend

to argue that their lending practices served a valid interest, they may make such arguments at a later stage of the case, as anticipated by the burden-shifting analysis established in discrimination cases and endorsed in *Inclusive Communities*. *See* 135 S. Ct. at 2522-23. These allegations are sufficient to state a plausible claim that Defendants' "policies" created an "artificial, arbitrary, and unnecessary" barrier. There is no requirement that the City anticipate any justifications that the Bank might adduce.

*Fourth*, the City has provided factual allegations linking the challenged neutral policies to a specific adverse racial or ethnic disparity.   The TAC alleges that these practices resulted in the statistical disparities documented in the detailed regression analysis. *See, e.g.,* TAC ¶¶ 58-66. Moreover, the statistical regression analysis that underlies the allegations in the TAC, which was performed by Professor Ian Ayres of Yale's law and business schools and who served as the expert economist on mortgage lending for the U.S. Department of Justice, controlled for plausible non-race characteristics, and found that minority borrowers were more likely to receive the higher cost loans than white borrowers.  TAC ¶ 60.  As the Eleventh Circuit held, the "alleged chain of causation is perfectly plausible: taking the City's allegations as true, the Bank's extensive pattern of discriminatory lending led to substantially more defaults on its predatory loans, leading to a higher rate of foreclosure on minority-owned property and thereby reducing the City's tax base."  800 F.3d at 1273. The Eleventh Circuit's determination that the City's substantially similar allegations "ha[ve] made an adequate showing" of proximate cause governs. *Id.* at 1282.  *Inclusive Communities'* discussion of "rigor" is fully met by Professor Ayres's analysis and does not change the validity of the Eleventh Circuit's conclusion in light of the Supreme Court's latest decision. The City here has satisfied any causality requirement in its pleadings at this early stage.

Defendants overreach by contending that the City must specifically isolate disparities in its regression analysis that are caused by facially neutral policies (rather than alleged intentionally discriminatory policies) at the pleading stage.[11]  Br. at 16.  Defendants' argument

---

[11] Defendants' assertion that the Complaint, which contains detailed allegations, statistical analyses and data, constitutes a "textbook case of impermissible 'shotgun' pleading" because it pleads both disparate impact and disparate treatment claims, is absurd.  The "unifying characteristic of all types of shotgun pleadings is that they fail to … give defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Defendants here have

*Footnote continued on next page*

1307858.1

again ignores the totality of the allegations and seeks to impose a requirement that the City disaggregate each alleged policy or practice in its Complaint and before any discovery.[12]  Such a requirement is directly contradictory with the Supreme Court's holding that "recognition of disparate-impact liability under the FHA plays an important role in uncovering discriminatory intent: it permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." *Inclusive Communities*, 135 S. Ct. at 2511-12. Requiring a plaintiff to disaggregate statistical disparities between allegedly intentionally discriminatory policies and allegedly facially-neutral policies would undermine the rationale behind *Inclusive Communities*, as well as the broader purposes of the FHA.

Defendants also assert that the statistics proffered must be limited to the limitations period.  Br. at 17.  This argument misapprehends the nature of a disparate impact claim and the continuing violations doctrine.  Pursuant to *Havens* and *City of Miami*, all of the alleged loans issued between 2004 and 2012 are at issue in this case because the City has pleaded that the conduct continued into the limitations period.  *See* § III(A)(1), *supra*.  Further, all of these loans are appropriately included in the regression analysis to determine the plausibility of the City's disparate impact claim—not just those issued during the relatively short limitations period as Defendants contend.  *City of Miami*, 800 F.3d at 1285; *Chin*, 685 F.3d at 152 (holding that statistical evidence outside the limitations period may be used to prove discrimination). Moreover, because *Havens* holds that a single instance of the discriminatory conduct in the limitations period is sufficient to bring in all the prior instances of that same discriminatory

---

*Footnote continued from previous page*

more than adequate notice of the City's claims; the City has properly alleged both facially neutral and intentionally discriminatory policies sufficient to support both their disparate impact and disparate treatment claims. *Compare with Cobb County v. Bank of Am. Corp.*, No. 1:15-cv-04081, 2016 WL 2937467, at *12 (N.D. Ga. May 2, 2016) (holding that, while a plaintiff may allege both intentionally discriminatory and facially neutral policies to support both disparate treatment and impact claims, the plaintiff had failed to do so in its complaint, and grating leave to amend).

[12] The statistical analysis need not disaggregate the City's claim of intentional discrimination from the disparate impact discrimination because the statistics provide circumstantial evidence of discriminatory intent, subject to rebuttal. *See Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1320 (11th Cir. 2012).

conduct, it makes no sense that the disparities must be proven within the limitations period.  A single instance of such conduct will never yield a statistically significant disparity.[13]

To the extent that such an analysis is required, the City has satisfied this requirement in the TAC.  Specifically, the City has alleged that Defendants have continued to issue loans to Miami subsequent to December 13, 2011 that were issued to minority borrowers and were more expensive than the loans issued to similarly situated white borrowers, and the TAC identifies some sample loans.  TAC ¶ 124.  The TAC further alleges that an examination of publicly available information on loans issued during this period strongly supports the conclusion that a greater number of more expensive and riskier loans were issued to minority borrowers than to non-minority borrowers during the two years preceding the filing of the complaint.  *Id.* ¶ 125.

Moreover, nothing in *Inclusive Communities* requires the City to perform the full-blown disparate impact analysis at the pleading stage, without the benefit of discovery that would be required to prove, rather than plead, this claim.  Because the City has pleaded a continuing violation, the continuance of the same lending practices that result in a discriminatory disparate impact melds the timely instances of that practice into the pre-limitations period instances of that practice to constitute a single claim, requiring but a single evaluation of the overall disparate impact.  *Id.*  Absent from the Eleventh Circuit's discussion of *Inclusive Communities* is any requirement that a plaintiff must plead and prove the existence of a disparate impact specifically within the two-year limitations period.  *See City of Miami*, 800 F.3d at 1286-87.  The Supreme Court could have, but did not, modify its prior decision in *Havens* to incorporate such a requirement.  The City has sufficiently alleged its disparate impact claim at this early stage of the proceedings.

---

[13] The approach mandated by *Havens* makes good sense, as pattern or practice claims, whether gauged in terms of disparate treatment or disparate impact, "are attacks on the systemic results of [discriminatory] practices."  *Segar v. Smith*, 738 F.2d 1249, 1267 (D.C. Cir. 1984).  In disparate impact cases, violative actions are typically spread out over time, and across the protected group, as there must be more than "sporadic discriminatory acts."  *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).  A disparate impact claim cannot be limited to a snapshot in time when evidence establishes a longstanding and unbroken pattern and practice.  If it could be so limited and still depend on statistical disparities, a violator need only space out its violations to avoid liability, and the continuing violation doctrine would have little value.

V.      <u>Conclusion</u>

　　　　For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: June 10, 2016　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　/s/ Porpoise Evans
　　　　　　　　　　　　　　　Joshua Spector (Florida Bar No. 584142)
　　　　　　　　　　　　　　　jspector@pbyalaw.com
　　　　　　　　　　　　　　　D. Porpoise Evans (Florida Bar No. 576883)
　　　　　　　　　　　　　　　pevans@pbyalaw.com
　　　　　　　　　　　　　　　PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
　　　　　　　　　　　　　　　200 S. Andrews Avenue, Suite 600
　　　　　　　　　　　　　　　Ft. Lauderdale, FL 33301
　　　　　　　　　　　　　　　Telephone:    (954) 566-7117


　　　　　　　　　　　　　　　Robert Peck (pro hac vice)
　　　　　　　　　　　　　　　robert.peck@cclfirm.com
　　　　　　　　　　　　　　　CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
　　　　　　　　　　　　　　　777 6th Street N.W., Suite 250
　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　Telephone:  (202) 944-2874


　　　　　　　　　　　　　　　Victoria Méndez (Florida Bar No. 194931)
　　　　　　　　　　　　　　　vmendez@miamigov.com
　　　　　　　　　　　　　　　CITY OF MIAMI
　　　　　　　　　　　　　　　OFFICE OF THE CITY ATTORNEY
　　　　　　　　　　　　　　　444 S.W. 2nd Avenue, Suite 945
　　　　　　　　　　　　　　　Miami, FL 33130
　　　　　　　　　　　　　　　Telephone:  (305) 416-1800


　　　　　　　　　　　　　　　Erwin Chemerinsky (pro hac vice)
　　　　　　　　　　　　　　　echemerinsky@law.uci.edu
　　　　　　　　　　　　　　　UNIVERSITY OF CALIFORNIA, IRVINE
　　　　　　　　　　　　　　　401 East Peltason Drive, Educ. 1095
　　　　　　　　　　　　　　　Irvine, CA 92697
　　　　　　　　　　　　　　　Telephone:  (949) 824-7722

Joel Liberson (*pro hac vice*)
*joel@taresources.com*
Howard Liberson (pro hac vice)
*howard@taresources.com*
TRIAL & APPELLATE RESOURCES, P.C.
400 Continental Blvd., 6th Floor
El Segundo, CA 90245
Telephone:   (310) 426-2361

*Attorneys for Plaintiff*

1307858.1