UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-CV-24506-WPD-LSS

CITY OF MIAMI, a Florida municipal corporation,

        Plaintiff,

  v.

BANK OF AMERICA, N.A.; and
COUNTRYWIDE BANK, FSB,

        Defendants.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT WITH PREJUDICE**

In its prior dismissal order, this Court rejected the City's attempt to use vague pleading and a hopelessly imprecise "regression analysis" to concoct a claim under the Fair Housing Act without any supporting factual detail. *See City of Miami v. Bank of America Corp.*, No. 13-24506, 2016 WL 1072488 (S.D. Fla. Mar. 17, 2016) (the "SAC Dismissal Order"). The opposition brief ("Opp."; ECF No. 112) makes clear that the City just disagrees with the Court's ruling, and, rather than attempt to remedy the pleading deficiencies identified in the SAC Dismissal Order, the City has instead hired new counsel, re-framed its rejected arguments, and elected to stand on a lightly amended complaint, now the Third Amended Complaint ("TAC"; ECF No. 102). The Court should dismiss this action again, this time with prejudice.

The fundamental problem in the TAC is that the City has still failed to state any timely claim. The City now concedes that it must plead at least one act of discrimination within the limitations period, yet it still provides just a single paragraph in the TAC attempting to do that (TAC ¶ 124). And that single paragraph does no more than list four property addresses associated with four loans made to minority borrowers, and state a conclusory allegation that those four loans were discriminatory. Despite clear direction from this Court (and the Eleventh Circuit), the TAC makes no attempt to articulate what made these four loans discriminatory or to connect the four loans in any way to Miami's claimed injury.

The City makes even less effort to cure the four independent defects this Court identified in the City's prior attempt to plead a disparate impact claim. On that front, the City offers no new or refined statistics, and no new allegations demonstrating causality or any of the other claim requirements. Instead, the City only points to new conclusory statements in the TAC and "requests that this Court reconsider its prior ruling" interpreting *Inclusive Communities*. Opp. at 12. This Court should decline that casual invitation and once again (and for the last time) dismiss the TAC for failure to satisfy black-letter Supreme Court precedent.

There is no reason for this litigation to continue; the Court told the City exactly what it must plead to state a claim and the City has not done so or suggested it could ever do so.

## ARGUMENT

### I. The City's Conclusory Allegations About Four Loans Do Not Plead a Timely Claim.

The Opposition opens by claiming (at 2-3, 5-8) that the TAC "remedies the[] pleading defects" which the Court identified – namely, the failure to allege: "(a) any borrower's specific minority status, i.e., Hispanic, African-American, etc., (b) what type of loan was made, (c) how that loan was supposedly discriminatory, (d) when the loan closed, or (e) what basis the City has

to claim the loan will default or enter foreclosure (and thus plausibly injure the City at some point)." SAC Dismissal Order at 3. The TAC does not cure these defects, and thus the City's attempts to defend the TAC fail.

As the Motion demonstrated (at 8-11), the overarching plausibility shortcoming in the TAC remains that the City fails to tell the Court *how* any loan originated within the limitations period was discriminatory. The TAC and Opposition are equally breezy on this issue, both reciting only the conclusory allegation that the four identified limitations period loans were "more expensive." Opp. at 3. But as the Motion pointed out (at 8), this is nowhere near the level of detail needed to answer even the most basic of questions about the City's claim, including, most fundamentally: How were they "more expensive" and what intentional discrimination did Defendants engage in to make these loans "more expensive"? The City concedes the TAC does not answer these questions (Opp. at 6, n.3), but tells the Court its conclusory allegation of loans being "more expensive" is enough. But that is not what either this Court or the Eleventh Circuit held, and it does not provide any information regarding "the characteristics that made [the loans] predatory or discriminatory." SAC Dismissal Order at 5.

The City's additional rejoinders attempting to validate its amendments are equally shallow. Initially, the City protests that it should not have to allege the "type" of loan because its theory "is based not on the issuance of particular types of loans, but on the issuance of loans with less favorable terms to minority borrowers than to similarly situated white borrowers." Opp. at 5. The City misrepresents its own pleadings, which identify the specific loan types that it claims are discriminatory. *See* TAC ¶ 58 (listing "subprime loans, interest-only loans, balloon payment loans, loans with prepayment penalties, negative amortization loans, no documentation loans," among others). The City's last-minute attempt to restate its SAC is improper.[1]

The reason "the type of loan" matters is that the City needs to have *some* plausible basis for believing a loan discriminatory. Indeed, the Eleventh Circuit specifically instructed Miami to

---

[1] The reason the City is now backtracking from its own pleading and insisting that the specific loan types do not matter is because it knows that none of the four loans at issue falls into any of those categories. It knows this because it has been established in other municipal lawsuits against Bank of America that none of those loan types has been made at all since 2008. *See City of L.A. v. Bank of Am. Corp.*, 2015 WL 4880511, at *6 (C.D. Cal. May 11, 2015) (recognizing that "Defendants' lending practices" were "fundamentally altered" from "the types of loans Defendants issued prior to the 2008-09 financial crisis that formed the basis of the Complaint's allegations of discriminatory lending practices").

plead "the characteristics that made [the loans] predatory or discriminatory." *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1284 (11th Cir. 2015) ("Appeal Op."). If the City were capable of showing that, *e.g.*, "interest-only loans" are inherently discriminatory for some creditable reason, then alleging that a minority borrower received an interest-only loan would obviously go some part of the way towards pleading a plausible claim as to that particular loan. But when the claim of discrimination is *not* based on the loan type but is instead based on the "terms" allegedly being "less favorable" or "riskier" or "more expensive" – as the City now claims (Opp. at 1, 3-5, 15-16, 19) – then it is incumbent on the City to allege something about the "terms" of these four loans and *how* they are "less favorable" as compared to others. Knowing nothing about the terms of the loans, there is no factual content in the TAC capable of "rais[ing] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Anyone* can randomly point to a loan and declare it "less favorable" than it should have been, or could have been, or might have been had the borrower been a different person. But that claim is purely speculative unless there is some description of the actual terms that make it less favorable – as well as the terms of the loans to which it is being compared and the intentional discriminatory conduct that allegedly caused the less favorable loan to be issued.[2]

Next, the City suggests (at 6) that the Court should attempt to wed the TAC's sparse allegations as to in-period loans with the TAC's unrelated allegations as to other types of alleged lending conduct that the City itself admits ceased years ago. *See* Complaint (ECF No. 1) ¶ 86 ("Since 2008 … there has been a shift in the types of loans issued – and not issued – by the Bank. … [I]n the last several years, the Bank tightened lending requirements"). This request need not delay the Court, as it is nothing more than a repeat of the City's failed attempt to invoke untimely conduct to state a timely claim. The Court directly rejected this ploy when it held the City must "plead a cognizable claim of an FHA violation *within* th[e] limitations period." SAC Dismissal Order at 3 (emphasis added).

Throughout the Opposition, the City attempts to compensate for its pleading failures by repeating the phrase "regression analysis" as though it were talismanic. Opp. at 3-4, 6-7, 15, 17-

---

[2] The City's response to Defendants' arguments that the TAC fails because it does not allege anything about any non-minority loan (Opp. at 7) is to say, in effect, "Oh, we'll get to that in discovery." In other words, the City has no facts now that a single similarly-situated white borrower got a better deal (because he or she was white). This is fatal to the City's bare contention that the four in-period loans are discriminatory.

18. The TAC cited this so-called "regression analysis" as ostensible support for its claim that the loans "were more expensive than the loans issued to similarly situated white borrowers during the limitations period," while simultaneously conceding that the in-period sample size is too small to be of any use. TAC ¶ 124; Opp. at 3 n.1. As Defendants showed in their Motion (at 11), however, the purported "regression analysis" suggested no such thing because it concerns eight years prior to the limitations period, with just twelve months of the nine-year period it purports to cover (2004-2012) overlapping with the limitations period. *See* TAC ¶¶ 60, 84, 123. Those data are incapable of raising a plausible inference that the four individual post-December 13, 2011, loans at issue were discriminatory, for multiple reasons.

First, two of the loans the City relies on were made in 2013, *after* the period covered by the "regression analysis." TAC ¶ 124 nn.39-40. The City does not even respond to the point that an analysis of loans from before 2013 says nothing about a loan made in 2013. Mot. at 10.

Second, even if the data said exactly what the City says – that minority borrowers who obtained loans from one or another of the Defendants were "more likely to receive a discriminatory loan" than white borrowers in the 2004-2012 period (TAC ¶ 60) – it does not support a plausible conclusion that *one specific* loan made to a minority borrower by Defendant Bank of America, N.A. in 2012 was intentionally discriminatory. In order for the City to draw that conclusion, it needs, at the very least, some detail as to how *that particular loan* was more costly than loans made to similarly situated whites and why. *See* Mot. at 8-10. That crucial factual content is conspicuously absent from the TAC. The City's rejoinder, that theirs is a case of a continuing violation and so they can cite out-of-time statistics (Opp. at 7), does nothing to save the hopelessly vague pleading as to these in-period loans – as discussed above, without a timely discriminatory loan as an anchoring event, the prior periods are irrelevant.

Third, with not enough to say about what happened in the relevant period, the City wrongly points to pre-period statistics and asserts "it is well-established that statistical evidence that includes data from outside the statute of limitations is relevant to help prove discrimination." Opp. at 7. The City cites a single case for this "well-established" proposition, and the case actually negates the City's argument. The case, *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012), held that a court could "admit[] evidence" of events outside the limitations period during a trial as "background evidence," so long as at least "one alleged adverse [] action . . . . occurred within the applicable filing period." *Id*. at 150. So *Chin* just gets the debate back to where we started: does the TAC assert "one alleged adverse [] action ... occurred within the

applicable filing period"?[3] It does not, precisely because a properly pled timely claim must exist *first*, before any "background evidence" about untimely conduct can acquire any relevance.

<u>Fourth</u>, the 2004-2012 data combines Bank of America and Countrywide loans: the City has no lending data for Bank of America standing alone. *See* Mot. at 10 & n.6. But Bank of America, N.A., not a Countrywide entity, was allegedly the lender on the 2012 and 2013 loans at issue here. TAC ¶ 124. Plaintiff cannot raise a plausible inference that Bank of America, N.A. discriminated against anyone post-December 13, 2011, by claiming that some Countrywide entity supposedly discriminated against other people in the years before.

**II.   The "Continuing Violation" Doctrine Is a Red Herring.**

Despite the clarity of the Court's prior ruling on the need to amend as to conduct *within the limitations period*, the City returns to its familiar insistence that it "alleges a continuing violation," and therefore its pre-period allegations "[c]ombined with" the otherwise insufficient in-period allegations create a timely claim. Opp. at 3-5. In truth, as the Court has already recognized, the application (or non-application) of the continuing-violation doctrine is irrelevant to the issues presented by the motion to dismiss. The Court explained why:

> The Eleventh Circuit held that the City's claims could be viable under the continuing violation doctrine if and only if the City could cure its failure to allege an FHA violation within the limitations period. … Thus, the issue here is not whether the continuing violation doctrine may apply, but whether the City has established the prerequisite to that doctrine: the identification of at least one timely and actionable claim of discrimination which serves as an anchoring FHA claim to which earlier, untimely claims might be tethered.

SAC Dismissal Order at 3-4. The continuing-violation doctrine lets a plaintiff bring "earlier, untimely claims" into a lawsuit "if and only if," *inter alia*, the plaintiff *also* has alleged a timely claim of the same nature. Here, the whole point of the pending motion to dismiss is that the City has *failed* to plead a timely claim of any sort.

The City concedes that "a continuing violation claim is timely so long as one instance of the same discriminatory practice occurs during the two-year limitations period." Opp. at 3 (citing Appeal Op. at 1284). The straightforward issue here is whether the City has pled the requisite

---

[3] All *Chin* stands for is a basic statement of what the continuing-violation doctrine is: a doctrine that permits a plaintiff to introduce evidence of untimely acts as "background evidence" for a timely claim. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). But considered "separately" from the timely claim, that background "is merely an unfortunate event in history which has no present legal consequences." *Id*. Notably, the Second Circuit in *Chin* went on to hold that the evidence of acts "outside the statute of limitations" was *not* relevant, because "the continuing-violation doctrine does not apply in this case." 685 F.3d at 155-56.

"one act of discrimination . . . during the statutory period." It has not done so.

### III. The City Has No FHA Claim Because It Is Not "Aggrieved" by Timely Conduct.

Defendants' Motion demonstrated, in line with the Court's SAC Dismissal Order, that: (i) the City must plead all of the elements of an FHA claim exist based solely on conduct within the limitations period; (ii) "[t]he plain statutory language of the FHA provides that a plaintiff has no FHA cause of action unless the person is 'aggrieved' by the alleged discrimination;" and (iii) because the City has not pled any injury from loans within the limitations period, it has not pled a cognizable FHA claim. SAC Dismissal Order at 4. The City's failure to plead an actual or imminent injury is sufficient grounds for dismissal by itself.

The City openly concedes that it has not suffered *any* injury from loans made within the limitations period. Opp. at 9 (City's "injury is not a function of a specific discriminatory act within the limitations period."). That alone is the end of the analysis, as this Court has already held that the City must be "aggrieved" by timely lending conduct in order to have a timely FHA claim. SAC Dismissal Order at 4.

Instead, disregarding the law of the case in this matter, the City attempts to invoke injuries from out-of-period loans. The City argues that it is enough to allege that loans made *prior to* the limitations period injured the City within the limitations period. Opp. at 9-10. That is plainly wrong under well-settled law. A lapsed cause of action does not become timely simply because the effects of the alleged violation manifested within the limitations period. *See*, *e.g.*, *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1263, 1265 (11th Cir. 2000) ("mere continuing effect" of untimely violation "does not extend the limitations period").

In expounding its injury argument, the City proffers that the test should only be whether the City has alleged that it ever suffered any injury "from the challenged discriminatory practice" as a whole, regardless of whether that injury stemmed from conduct occurring years before the limitations period. Opp. at 10. In effect, the City asks this Court to hold that an injury stemming from a loan made in 2004 still satisfies the FHA's "aggrieved" requirement for an FHA claim concerning a different loan made in 2014. Nonsense. This kind of untethered injury theory has no grounding in the law and is directly contrary to this Court's SAC Dismissal Order (at 4).

In support, the City relies only on a misunderstanding of the Supreme Court's decision in *Havens*. Opp. at 10 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). The City is correct that in *Havens* a non-profit fair housing entity, HOME, was deemed to have suffered a cognizable "drain of resources" injury as a result of having to address the effects of

discriminatory conduct. But the City is wrong in suggesting HOME did not claim to have suffered such an injury from *timely* discriminatory conduct. In its continuing violation analysis, the Supreme Court first held that one individual plaintiff was discriminated against *within* the FHA's limitations period, which was then 180 days. 455 U.S. at 381. The Court held that HOME had a timely claim because its "injury to its counseling and referral services" stemmed in part from "the last alleged incident" of discrimination, *i.e.* a claimed "resource drain" injury directly from the timely act of discrimination. *Id.* The City is thus wrong when it tells this Court that "HOME did not claim that, and the Court did not analyze whether, the [timely] instance of discriminatory conduct injured HOME." Opp. at 9. The *Havens* decision is to the contrary.

This stands in contrast to the allegations in the TAC concerning the City's claimed injury. In every single paragraph in the TAC asserting an injury, the City traces that injury back to only one thing: foreclosed and vacant properties. *See* TAC ¶ 99-122, 133. Whether the injury is property tax-related or the provision of municipal services, the TAC is explicit that the City suffers that injury if, and only if, a property goes into foreclosure and goes vacant. *Id*. Thus, unlike HOME, the City does not claim to have suffered any injury from "the last alleged incident" of discrimination, because the City does not claim that incident (or any other within the limitations period) has resulted in a foreclosure – the claim arises from the foreclosure itself.

On this point, the City admits it cannot allege that any of the four in-period loans went into foreclosure or even had missed mortgage payments, let alone that the City sustained injury from them. Instead, the City hangs its hat on a flimsy assertion that because "past discriminatory practices of the same kind resulted in injury to the City, it is expected that the same unlawful acts today will cause the types of injuries to the City." Opp. at 10. But the Court has already rejected this level of abstraction as too remote because it does not support the claim that "any supposed future injury related to the four discriminatory loans alleged to have violated the FHA during the limitations is imminent or about to occur." SAC Dismissal Order at 4.

In another part of its brief, the City asserts that the Eleventh Circuit's decision also supports its attempt to stitch together a claim that combines an alleged injury from time-barred conduct with non-injurious timely conduct. Opp. at 7-8. Once again, the opposite is true. The Eleventh Circuit pointed out that Miami had claimed ten property addresses "corresponded to [] foreclosures," but had "failed to allege that any of the loans closed within the limitations period" and failed to provide "specific information" such as "when the loan closed" and "when the property went into foreclosure." Appeal Op. at 1283-84. Thus, the Eleventh Circuit's detailed

recitation of how Miami had failed to plead a timely claim included Miami's failure to allege when a loan that "closed within the limitation period" "went into foreclosure." *Id*. This negates the City's suggestion that this Court can simply overlook the City's lack of any injury from a loan made within the limitations period.[4]

The City's injury argument, at best, is nothing more than a complaint that Congress should have given municipalities a longer limitations period within which to bring this type of unusual lawsuit. But Congress chose two years, and thereby balanced the advantages of civil remedy against the usual considerations for advancing claims when memories are fresh. Indeed, the City's failure to allege foreclosures in the TAC is striking, given that the limitations period goes back to December 2011 – more than 5.5 years back from today. Thus, there was *more* than enough time for a foreclosure to occur if the City's allegations were plausible, particularly if one credits the City's allegations that the loans at issue were at a *heightened* risk of foreclosure.

No other plaintiff, with any kind of claim, would be allowed to proceed on such a pleading, and neither can the City. *Cf. Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016) (not all statutory violations "cause harm or present any material risk of harm").[5]

## IV. The City Fails to Satisfy the Supreme Court's Requirements for Pleading a Disparate Impact Claim.

The City's brief is almost completely non-responsive to Defendants' argument that the City failed to plead the elements of a disparate-impact claim as set forth by the Supreme Court in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135

---

[4] The City argues that it need not allege a timely injury because the "trigger for commencement of the limitations period is the 'last asserted occurrence'" of a discriminatory practice. Opp. at 7-8 (quoting Appeal Op. at 1284). The fact that the period begins to run on the last occurrence of a timely practice does not relieve a plaintiff from pleading all the elements of its claim, including injury. Needless to say, not one of the cases in Plaintiff's long string cite of cases that "reached the same conclusion" as *Miami* (Opp. at 7 n.5) suggests that a plaintiff can pursue an FHA claim without an injury within the limitations period. Instead, these cases stand for the unrelated proposition that it is not *enough* just to plead an injury within the limitations period – the plaintiff must *also* allege discriminatory acts within that period. *See, e.g., Carter, supra*.

[5] Relatedly, the City cannot seek recovery for "municipal services" damages from *any* conduct, timely or untimely. Mot. at 13. The City concedes the law, but asserts that Florida lacks the power to deny *itself* remedies that might be granted by Congress. Opp. at 12-13. But a sovereign has every right to restrict its own power. Nothing in the FHA *requires* Florida to allow its municipalities to seek public services damages. In any event, "broad remedial intent" is far from the "explicit" authorization required to enable recovery of otherwise unavailable damages. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 979-80 (9th Cir. 2008).

S. Ct. 2507 (2015). Instead, the Opposition's primary thrust on this issue is to offer a multi-page argument on why the Court must "reconsider its prior ruling regarding the appropriate pleading standard for FHA disparate impact claims." Opp. at 11-14. This is entirely inappropriate; if the City wanted this Court to reconsider its prior ruling it should have abided by the Federal Rules of Civil Procedure and filed the appropriate motion requesting that relief. The City did not do this. Its backdoor effort at reconsideration should be rejected out-of-hand.

Even if the City had filed a proper motion, there is no ground to reconsider anything because this Court's recitation of the applicable four-part pleading standard was drawn directly *quotations* from *Inclusive Communities*: (i) "statistically-imbalanced lending patterns," (ii) "a facially-neutral policy used by Defendants," (iii) "artificial, arbitrary, and unnecessary barriers" produced by such a policy, and (iv) a "robust causal[]" connection between the policy and the statistical disparity. SAC Dismissal Order at 4 (quoting *Inclusive Communities*, 135 S. Ct. at 2522-24). Given this, it is entirely unclear how the City can claim *Inclusive Communities* has been so grievously misinterpreted.

The truth is the City seeks reconsideration (albeit improperly) because it recognizes it has not and cannot plead these elements. Instead, the City constructs a straw-man argument, maintaining that neither *Inclusive Communities* nor the Eleventh Circuit have created "a new or heightened pleading standard" and that the City need only plead the "short and plain statement" required by Rule 8(a). Opp. at 12, 13. At no point did Defendants ever suggest that *Inclusive Communities* established a "heightened pleading requirement." What *Inclusive Communities* does is state the basic elements of the claim.[6] A failure to plead the basic elements of a claim is grounds for dismissal, even under Rule 8(a). *See* 135 S. Ct. at 2523-24 (imposing "standards for proceeding with disparate-impact suits" because a "plaintiff who fails to allege facts at the pleading stage . . . cannot make out a prima facie case").

The City fails to plead a statistical imbalance for the reasons discussed in Part II.B, *supra*, and for the additional reason that the only statistical imbalance claimed by the City was alleged to result from intentional discrimination, not from any "facially neutral" policy. *See* Mot. at 14 (citing TAC ¶ 64). The City tries to excuse itself from the burden of pleading a statistical

---

[6] And *Inclusive Communities* is undeniably the Supreme Court's most recent and most authoritative statement of the pleading standard for FHA disparate impact claims, which makes the Opposition's lengthy exposition (at 12-13) on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), entirely misplaced and irrelevant.

disparity by claiming that it only needs "a single instance of the discriminatory conduct in the limitations period," relying on *Havens* and the Eleventh Circuit's *Miami* decision. Opp. at 18. Neither opinion addressed disparate impact liability; indeed, *Miami* expressly refused to address the subject. *See* Appeal Op. at 1287. If the City wants to recover for disparate impact liability it must, as was true for its disparate treatment claim, plead a timely impact claim – which it has not done. Mot. at 17. The City complains that would be too difficult, because its anchoring claim of treatment discrimination does not show "a statistically significant disparity." Opp. at 18-19. That much is true, but it *underscores*, rather than excuses, the City's failure to plead the basic elements of a disparate impact claim. If the City's theory is that there was only a "single instance" of discrimination in the limitations period (or even four instances), then it cannot rely on a doctrine requiring a statistical disparity in order to avoid dismissal.[7]

The City's position on the identification of a "facially-neutral policy" is even more brazen, as it essentially repeats the same kinds of "policies" the SAC Dismissal Order rejected. Mot. at 15-16 (identifying similar deficiencies in handful of amendments to Miami's policy list). The City is apparently banking on this Court simply changing its mind on this requirement, but it offers no justification for such an about-face – and there is none.

Finally, the last requirement of *Inclusive Communities* is the "robust" causal connection between the facially neutral policy and the claimed statistical disparity. The City misunderstands the issue (and misrepresents the Eleventh Circuit's ruling) when it argues that the Eleventh Circuit already settled the issue in its favor when it held that "the City's substantially similar allegations 'ha[ve] made an adequate showing' of proximate cause." Opp. at 17 (citing Appeal Op. at 1282). This Court already directly rejected that *exact* argument. SAC Dismissal Order at 5. The City has done literally nothing in either the TAC or the Opposition to attempt to demonstrate that the "policies" it has identified have any kind of causal connection to its alleged disparities. This is fatal to the City's disparate impact claim.

**V.    The Dismissal Should Be With Prejudice.**

The SAC Dismissal Order fully informed the City of the relevant pleading standard for its FHA claims. The City disagrees with the Order and elected not to comply with it, likely because it has no supporting facts. The TAC should be dismissed with prejudice.

---

[7] The City wrongly asserts (Opp. at 19 n.13) its claim "makes good sense" as a pattern or practice claim; however, such claims are limited to class actions. *See Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 967-69 (11th Cir. 2008).

|  | Respectfully submitted, |
|---|---|
|  | /s/*Christopher S. Carver* |
| THOMAS M. HEFFERON, ESQ. | MICHAEL B. CHAVIES, ESQ. |
| *thefferon@goodwinprocter.com* | Florida Bar No. 191254 |
| JAMES W. MCGARRY, ESQ. | *michael.chavies@akerman.com* |
| *jmcgarry@goodwinprocter.com* | CHRISTOPHER S. CARVER, ESQ. |
| MATHEW S. SHELDON, ESQ. | Florida Bar No. 987263 |
| *msheldon@goodwinprocter.com* | *christopher.carver@akerman.com* |
| (all admitted *Pro Hac Vice*) | WILLIAM P. HELLER, ESQ. |
| **GOODWIN PROCTER LLP** | Florida Bar No. 993580 |
| 901 New York Avenue NW | *william.heller@akerman.com* |
| Washington, DC 20001 | MARISSA X. KALIMAN |
| Tel.: 202-346-4000 | Florida Bar No. 100532 |
| Fax: 202-346-4444 | *marissa.kaliman@akerman.com* |
|  | **AKERMAN SENTERFITT LLP** |
| *Attorneys for Defendant BANK OF AMERICA, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB* | One S.E. Third Avenue – 25th Floor |
|  | Miami, FL 33131-1714 |
|  | Tel.: 305-374-5600 |
|  | Fax: 305-374-5095 |
|  | *Attorneys for Defendant BANK OF AMERICA, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB* |

Date:   June 28, 2016

-12-

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of *Defendants' Reply Memorandum in Support of Their Motion to Dismiss the Third Amended Complaint with Prejudice* were served on June 28, 2016, on all counsel or parties of record on the following Service List via CM/ECF.

/s/ Christopher S. Carver

<u>SERVICE LIST</u>

*City of Miami v. Bank of America, N.A.*
CASE NO. 13-CV-24506-WPD
U.S. District Court, Southern District of Florida

**Counsel for Plaintiff City of Miami**
(service by CM/ECF)

Lance A. Harke, Esq.
**HARKE CLASBY & BUSHMAN LLP**
9699 N.E. Second Avenue
Miami, FL 33138
Telephone: 305.536.8220
lharke@harkeclasby.com

Victoria Méndez, Esq.
**OFFICE OF THE CITY ATTORNEY**
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130
Telephone: 305.416.1800
vmendez@miami.gov

Erwin Chemerinsky, Esq.
**UNIVERSITY OF CALIFORNIA - IRVINE**
401 East Peltason Drive, Educ. 1095
Irvine, CA 92697
Telephone: 949.824.7722
echemerinsky@law.uci.edu

Joel Liberson, Esq.
Howard Liberson, Esq.
**TRIAL & APPELLATE RESOURCES, P.C.**
400 Continental Blvd., 6th Floor
El Segundo, CA 90245
Telephone: 310.426.2361
joel@taresources.com
howard@taresources.com

Robert S. Peck, Esq.
**CENTER FOR CONSTITUTIONAL LITIGATION**
777 - 6th Street NW, Suite 520
Washington, DC 20001
Telephone: 202.944.2803
Robert.peck@cclfirm.com

**Counsel for Defendants Bank of America, N.A., for itself and as successor by de jure merger to Countrywide Bank, FSB**
(service by CM/ECF)

Michael B. Chavies, Esq.
Christopher S. Carver, Esq.
William P. Heller, Esq.
Marissa X. Kaliman, Esq.
**AKERMAN LLP**
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
michael.chavies@akerman.com
christopher.carver@akerman.com
william.heller@akerman.com
marissa.kaliman@akerman.com

Thomas M. Hefferon, Esq.
James W. Mcgarry, Esq.
Mathew S. Sheldon, Esq.
(all admitted *Pro Hac Vice*)
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC 20001
Tel.: 202-346-4000
Fax: 202-346-4444
thefferon@goodwinprocter.com
jmcgarry@goodwinprocter.com
msheldon@goodwinprocter.com